[In Bank.—January 22, 1884.]

## THE PEOPLE, RESPONDENT, *v.* WILLIAM R. McDOWELL, APPELLANT.

CRIMINAL LAW—EVIDENCE—RELEVANCY.—Where there is evidence tending to show that the wounds inflicted upon the deceased might have been caused by a slung-shot, the testimony of a witness relating to the exhibition of such an implement by the defendant, subsequent to the commission of the crime and just prior to his arrest, is relevant and material.

ID.—INSTRUCTIONS.—A charge to a jury must be considered as a whole, and although certain clauses considered separately may seem to assume the guilt of the defendant, if the charge as a whole presents the case properly to the jury, the judgment will not be reversed.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order refusing a new trial.

The defendant was convicted of the murder of one Maggie O'Brien. There was evidence tending to show that the wounds inflicted upon the deceased might have been caused by a slung-shot, and the court allowed the prosecution to introduce the testimony of the witness Eva Hicks concerning an interview she had with the defendant the night before his arrest relating to a slung-shot which he then exhibited and said that "they (referring to some third persons) had better keep their mouths shut or he would give them this," referring to a slung-shot which he then produced and laid on the table. The remaining facts sufficiently appear in the opinion of the court, and in the dissenting opinion of MR. JUSTICE SHARPSTEIN.

*Byron Waters,* and *O. S. Sparks,* for Appellant.

*Attorney-General Marshall,* and *R. E. Bledsoe,* for Respondent.

MYRICK, J.—The testimony of the witness Hicks as to the slung-shot in the possession of the defendant, and as to the statement made by defendant, was relevant and material, because there was evidence tending to show that the wounds inflicted upon the person of deceased might have been caused by such an implement. The statements of the witnesses Wixon Rice and Cheatham, as to the place where the deceased was supposed to have been killed, were for the purpose, merely, of locating the spot, as foundation for further examination, and was so stated.

While there are certain portions of the charge of the court below which, segregated, are objectionable, still when taken in connection with the context, as they must be, we think it cannot be fairly said that there was on the part of the court any invasion of the province of the jury.

Judgment and order affirmed.

MORRISON, C. J., ROSS, J., McKEE, J., McKINSTRY, J., and THORNTON, J., concurred.

SHARPSTEIN, J., dissenting. — I dissent.    In one part of the charge of the court this language occurs:—

"The guilt of the prisoner rests upon evidence of his own declarations, also evidence tending to show that the dead body of the deceased was found with marks of violence and wounds upon it, and other circumstances tending to connect the defendant with the cause of her death.

"The conclusion that the prisoner is the person who committed the murder, from all the facts and circumstances surrounding the killing, is a result of a process of reasoning which men exercise in almost every department of society, and in the practical affairs of life and experience."

If we assume, as I think we must, that the jury attached to this language the meaning which men ordinarily attach to it, I cannot see how we can escape the conclusion that the appellant is entitled to a new trial.

The Constitution (art. vii. § 19) declares that "judges shall not charge juries with respect to matters of fact, but may state the evidence and declare the law."

In this case the jury were told that the guilt of the prisoner rested upon evidence of his own declarations, and upon evidence tending to show other material facts and circumstances.    And then the jury were informed that the conclusion that the prisoner was the person who committed the murder, from all the facts and circumstances surrounding the killing, was the result of a certain process of reasoning.    The jury were certainly warranted in inferring from this that the court knew that somebody had arrived at that conclusion, and was familiar with the process by which it had been reached.

The court stated conclusions not facts. It told the jury what the guilt of the prisoner rested on, and by what process of reasoning the conclusion that he was the person who committed the murder was reached.

If an error of this kind could be cured by giving other instructions which were free from error, it would seem to follow that no judgment could be reversed for errors in the charge of the court unless the entire charge was erroneous, which would rarely if ever occur in trials for murder, as the greater part of the charge usually given in such cases has become, as it were, stereotyped.

I think the judgment should be reversed.

Petition for rehearing denied.