[Crim. No. 4902. Second Dist., Div. One. Mar. 16, 1953.]

THE PEOPLE, Respondent, v. RICHARD CHAVEZ ES-
TRELLA et al., Defendants; ERNEST GALINDO
MARTINEZ, Appellant.

Cletus J. Hanifin for Appellant.

Edmund G. Brown, Attorney General, and Norman G. Sokolow, Deputy Attorney General, for Respondent.

DORAN, J.—The appellant, charged jointly with Richard Chavez Estrella and Alex Amadril Vasquez, was convicted of burglary of Woodruff's Mens Store in Alhambra. The burglary involved theft of 89 tropical worsted suits and 22 pairs of shoes from a warehouse, of the approximate value on a cost basis, of $1,200, the loss being discovered by the proprietor on December 17, 1951, at about 11:30 a. m. The warehouse door, although closed, was not locked during the daytime, and the goods in question were just inside the door. The defendant Vasquez pleaded guilty; Estrella, who pleaded not guilty, was tried with appellant Martinez and convicted. The appellant pleaded not guilty and admitted a prior conviction.

The first time the defendant Martinez was seen by Mr. Woodruff, the proprietor, was on December 21, 1951, about 11:30 a. m. when appellant was observed standing near a green Pontiac sedan not far from the warehouse, talking to two men in the automobile. About the same time, Horace Whipple, an employee, likewise saw Martinez standing beside the green Pontiac; defendant Vasquez was seated behind the steering wheel, and Estrella was walking from the vicinity of the warehouse door toward the alley. Two other employees, Mrs. Freda Koontz, a part-time saleslady, and Curtiss Ellis, a salesman and buyer, had seen Martinez and the green Pontiac near the warehouse, on December 17, 1951.

Stolen articles were found in Estrella's bedroom, at Vasquez' residence, and in Martinez' possession. Part of the merchandise was recovered from the Central Market where it had been disposed of. The defendants were identified at the police station by the proprietor and others. Martinez denied being implicated in the burglary; claimed that stolen shoes were a present from Vasquez, and that "he got the suit from Vasquez." The other defendants attempted to exonerate Martinez and Estrella testified that Martinez was

not present at the Woodruff store. There was testimony by police officers to the effect that the defendants had admitted being involved in the burglary; this conversation was denied by defendants. The green sedan was owned by Estrella's wife who was arrested but later released.

The appellant testified to employment as a "swamper," unloading fruits and vegetables at the Union Terminal Market, earning $20 or less per day; appellant was married and supporting a family. Martinez denied ever having been at the Woodruff store. Appellant likewise denied having any conversation with officers to the effect that "the reason he was denying his part in the burglary was because he was on parole and would have to go up for two years." Officer Schofield testified that "We asked the defendant Martinez how many shots or caps per day he was required to keep him fixed, and he stated between six or eight. I asked him how much they were per cap. He said five dollars. . . . A cap "is a small capsule full of some form of narcotics that is used for administration by hypodermic needle." There was testimony by Bailiff Jack Barnes that the defendant Vasquez had stated in the courtroom that "If I would tell the truth, all three of us would go to jail."

Appellant assigns error in permitting the prosecution, on rebuttal, to introduce evidence to the effect that appellant had admitted the use of narcotics. Appellant contends that not only was such evidence improper on rebuttal, but was introduced for the purpose of prejudicing the jury against the appellant by showing "other offenses wholly unconnected with the offense charged." Respondent's answer to this is that such proof was admissible on rebuttal of Martinez' testimony "that he was a hard-working man who was supporting a family," earning $10 to $20 a day; such evidence showing that appellant was using $30 to $40 worth of narcotics per day, and thus furnishing a motive for the burglary, committed for the purpose of obtaining necessary money to buy narcotics.

*People* v. *O'Brand*, 92 Cal.App.2d 752 [207 P.2d 1083], cited as authority for the admission of such evidence, is inapplicable to the present situation. In the O'Brand case, where defendant was charged with attempted burglary of a drugstore, evidence in respect to the defendant's use of narcotics was held admissible to establish a motive for the attempted burglary. In the present case appellant was accused of burglary of men's clothing, a subject having nothing

to do with the use of narcotics. Only by a strained interpretation can the O'Brand case be deemed authority for admission of evidence of appellant's habits in reference to the use of narcotics. In the language of that opinion, "the general rule forbids the admission of evidence of other crimes and degrading practices unrelated to any issue on trial."

Although there was error in the admission of evidence of appellant's use of narcotics, such error cannot be deemed prejudicial in the instant case. If the evidence connecting Martinez with the burglary had been slight, the error in question might well be prejudicial, but such is not the case. The record discloses abundant, substantial evidence to support the verdict, and should a new trial be ordered, no different result could reasonably be expected. In this state of the record, the admission of such evidence cannot justify a reversal.

The appellant complains of the trial court's failure to give any instruction relating to receiving oral admissions with caution, citing section 2061(4) of the Code of Civil Procedure which provides that the jury shall "be instructed by the court on all proper occasions: . . . 4. that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." Appellant's brief concedes that "defendant did not offer such instruction," but cites *People* v. *Bemis,* 33 Cal. 2d 395 [202 P.2d 82], stating that "it cannot be assumed that the jury will have in mind the considerations that may affect the weight or credibility of the testimony of an accomplice or the evidence of the oral admissions of a party."

While the record herein discloses testimony in reference to conversations and oral admissions which were controverted by the appellant, and no instruction given concerning the manner in which such admissions were to be considered, the error cannot be deemed prejudicial. As said in respondent's brief, the decision was in nowise dependent on such admissions, and was adequately supported by other substantial evidence, "such as the possession by the defendant of some of the stolen merchandise, and the testimony of four witnesses that the defendant was in the vicinity of the burglarized store on the day of the burglary and four days later."

It is likewise contended that there was error "in limiting the cross-examination by appellant of the prosecuting witness, Clinton V. Woodruff . . . for the purpose of testing the powers of observation and the memory of such

witness." The witness was asked whether "when you came to the jail that your primary purpose was identifying certain people," which question was excluded on the ground that the purpose of coming to the jail was immaterial. Woodruff was later called as a witness by the appellant and examined in reference to the identification, although it is asserted that this later examination "was forced on the defense," by the curtailment of previous cross-examination. No reversible error is apparent in reference to this matter. It does not appear that appellant suffered any injury being accorded full opportunity to go into the matter of identification and to test the credibility of the witness.

The trial court is alleged to have erred "in refusing to permit defendant to question evidence as to the voluntary character of statements and implied admissions as affecting admissibility of the alleged confession and statements of the defendant." Officer Miller, the witness under examination, testified that the statement by appellant was made freely and voluntarily. On cross-examination there was an effort to show that "the arrest of appellant's wife was used as an instrument to apply pressure to the defendant," which evidence was objected to as not proper cross-examination. ■ As said in respondent's brief, quoting from *People* v. *Monson,* 102 Cal.App.2d 308, 313 [227 P.2d 521], "The extent to which a c·.ss-examination may be carried rests largely in the discretion of the court." In the instant case the record discloses ʟo abuse of discretion and no resulting prejudice to appellant's rights.

The appellant alleges prejudicial error by reason of "the repeated and gross misconduct of the District Attorney during the course of the trial and in his argument to the jury" and contends that "the admonitions of the trial court did not remove or overcome the prejudicial effect of said misconduct." Specifically, appellant calls attention to the fact that "The prosecutor was not content to show that defendant had been once previously convicted in impeachment . . . but continued the subject stressing 'parole' and 'San Quentin' seeking to degrade appellant and influence the jury to think that appellant was the type of man to commit the crime charged." Also stressed is the prosecutor's repeated reference to "narcotics," and an assertion that the defendants "apparently sought to make their mustaches look alike" to conceal identity.

It may well be that the conduct of the district attorney

in this case was, in some of the instances mentioned, not what it should have been. In the heat of trial and zeal of prosecution it is not uncommon for attorneys to overstep the bounds of propriety. It is always the duty of the trial court to curb such propensities and to make certain that members of the jury are not led astray by improper statements. Appellant herein, apparently, does not claim that the trial court neglected this duty, but rather that the prejudicial effect was so great that nothing could cure it. Unless appellant has suffered some prejudice from the prosecutor's conduct, it cannot be deemed reversible error, and in the instant case such prejudice is not apparent.

 The appellant's argument that ''The verdict is contrary to and unsupported by the evidence and contrary to law,'' as hereinbefore indicated, is untenable. Part of the stolen merchandise was found in appellant's possession, and the jury saw fit to disbelieve the defendant's explanation that the goods had been innocently received. Testimony as to the presence of Martinez at the scene of the burglary further connected this defendant with the crime. In no sense can the verdict be deemed unsupported. And for the reasons hereinbefore mentioned no reversible error was committed in the denial of appellant's motion for a new trial.

The judgment and order denying a new trial are affirmed.

White, P. J., and Drapeau, J., concurred.