[Crim. No. 4935. Second Dist., Div. Two. June 22, 1953.]

THE PEOPLE, Respondent, v. WILLIAM C. McCAFFREY, Appellant.

612

§

Ward Sullivan for Appellant.

Edmund G. Brown, Attorney General, and Michael J. Clemens, Deputy Attorney General, for Respondent.

MOORE, P. J.—On December 25, 1951, appellant was a member of the police force of Los Angeles. At 5:30 a. m. he was serving as booking officer at the Lincoln Heights Jail. At that time six prisoners were booked, to wit, Manuel Hernandez, William Wilson, Jack Wilson, Elias Rodela, Eddie Nora and Raymond Marquez. By reason of the events that immediately occurred, appellant was indicted in three counts of having assaulted Nora, Jack Wilson, and Marquez, "by means of force likely to produce great bodily injury, a felony." (Pen. Code, § 245.) He pleaded not guilty, but following a trial he was convicted as charged in counts 1, and 3; and of "Assault, a misdemeanor, a lesser offense necessarily included within the charge set forth in count 2."

Appellant now contends that the evidence did not prove the batteries were of such force as to inflict "great bodily injury"; that the court erred in refusing certain instructions, and in denying his motion for a new trial based upon asserted prejudice on the part of certain trial jurors. Appellant admits having applied unlawful force to all three victims named in the indictment and contends, therefore, that he is guilty of only simple battery. (Pen. Code, § 242.) The point of his appeal is that there is not substantial proof that the force applied was such as was "likely to produce great bodily injury" and therefore he is not guilty of violating section 245. Our inquiry is therefore confined to a consideration of whether under the evidence the jury could not have been justified in finding that appellant's assaults on Nora and Marquez were "by means of force likely to produce great bodily injury."

## ASSAULT ON NORA

Nora testified that he is a civil engineer; that he had not participated in the barroom fracas between the police and civilians for which he and the other prisoners had been arrested and hence carried no injuries as a result thereof. However, at the time of reaching the jail, his head and lips were swollen; his arms, chest and back were bruised and he had a deep gash in his right shin. Before going to jail Nora and his friends were examined at the receiving hospital where the physician found contusions of his face, legs, knees and arms. After he had been booked and taken with his five friends into a room on the second floor, the six men were seated on a bench. A policeman commanded Nora to stand, then struck him. Thereupon, another officer conducted him across the hall to another room, ordered him to sit in a chair, then joined four others in beating Nora "real hard" with their fists, one blow to the stomach causing a bowel evacuation. "Then I saw what was coming so I went down on the ground and when I got down on the ground they started hitting and kicking me . . . about three or four minutes." After a bath he was placed in his individual cell. Appellant entered it with several officers, knocked Nora down, stood upon him, "raised up his foot, his leg and he threw it down into my side real hard," in the area of his left kidney. The shoes appellant wore made a hard contact. Subsequently appellant returned, raised his foot as if to kick Nora, when the latter lost consciousness. Thereafter the prisoner's urine was red, as was the blood he vomited at the hospital on December 26, and continued reddish for several weeks. When Marquez left the jail he saw Nora's lips were so swollen he could not speak; his face was so bruised his appearance was "quite" changed, and two days later still showed the effects of a violent beating; also, he was still hunched over as he walked.

## ASSAULT ON MARQUEZ

Marquez was also one of the party arrested after the barroom altercation. Along with Nora and the others he was taken to the receiving hospital and examined by Dr. Ho, then booked at Lincoln Heights. He was taken into the interrogation room where appellant and two other officers rained about 30 blows upon him. One struck the back of his head with his fist, picked him up and knocked him down again. He was then returned to the booking office. While waiting there he saw Hernandez and William Wilson escorted

into the interrogation room from which then came a noise and commotion "as thought something was hitting the walls of the room." Appellant visited Marquez' cell three or four times and on each occasion struck the prisoner with his fist in the face or stomach 10 times without giving a reason for his cruelties. When Marquez left the jail on December 26 his condition had undergone a radical change since his entry. His face was swollen, his body black and blue, his feet were very sore, his kidneys and testicles suffered pain, and blood was in his urine.

### Assault on Jack Wilson

While Jack Wilson's condition at the jail is not important so far as count 2 is concerned, yet it should be recited as further proof of the unbridled audacity of appellant and his confederates. Jack was a Marine. On leaving the jail his left eye was closed; his face and hair full of blood, his groin discolored and his body bore brown and black marks. After he had been booked he was taken to a large room. Three officers waited with rolled up sleeves. They quizzed him, knocked him against the wall and asked if he would "hit cops anymore." One officer observed: "This guy's too skinny; bring in the next one." Wilson was confined to his cell about 10 hours before he was released in a condition far different from that at the time of his arrest. A black area circled his eyes; his bare feet hurt; he had bled from nose and mouth, and was still bleeding.

### Corroboration

The testimony of the victims was corroborated by the following:

Officer Nett testified that the three prisoners were in pretty bad shape when they were booked. He saw Jack Wilson escorted to the interrogation room by appellant and three other officers. This prisoner was shoved around the room for about three minutes and was struck by appellant only. Officer Strange observed a fellow officer deliver a forearm smash to the shoulder of one prisoner and Officer Sullivan saw two prisoners taken separately into the interrogation room and testified they were "pushed and jostled around for two or three minutes." Prisoner Rodela saw Marquez led into a room and for two or three minutes heard "scuffling and banging against the wall" and when Marquez returned his hair was "all mussed up, his clothes were off to the side and he was shaking his head." Also, he saw Nora taken

into the interrogation room and heard sounds of scuffling and banging the walls. The same facts given in testimony by the above named corroborating witnesses were testified to by prisoner Hernandez.

## APPELLANT'S TESTIMONY

Appellant now assumes the air of injured innocence. He waves aside the factual mountain of the prosecution evidence, presents the testimony he gave as though it had been adopted by the jury and as though the State were trying to overcome an established record of one found not guilty. He denied having entered the cell of any victim, or that he struck Marquez or kicked Nora. But he admits that the prisoners looked bad when he first saw them; that he struck each of them three or four times, possibly more; that he was angry with them at the time and entered the interrogation room with each of them. By such admissions he did not dispel the testimony of the victims that they had been savagely attacked by him; that they were knocked to the floor, struck on the face, nose and eyes, kicked in the stomach, ribs and groins and were, in the cases of Nora and Marquez, left with injured testicles and kidneys. That the assaults were made with ''means of force likely to produce great bodily injury'' was a fact in each instance for the determination of the jury. It was for them to hear the victims talk, to see their behavior as they detailed the tragedies, their reactions to cross-examination, their apparent powers of resistance. By observing the men who had been assaulted, the jury—as reasonably intelligent men and women—could fairly estimate the likelihood of the batteries to ''produce great bodily injury.'' (*People* v. *Pullins,* 95 Cal.App.2d 902, 904 [214 P.2d 436]; *People* v. *Orona,* 72 Cal.App.2d 478, 486 [164 P.2d 769]; *People* v. *Score,* 48 Cal.App.2d 495, 498 [120 P.2d 62]; *People* v. *Bumbaugh,* 48 Cal.App.2d 791, 797 [120 P.2d 703].) While the proof indicates a serious condition in both Nora and Marquez after the assaults, it is not indispensable to a verdict under section 245 that ''great bodily injury'' be the actual result. If the force applied is found to have been likely to effect such a result, the statute is violated. In *People* v. *Score, supra,* it was held that blows administered with the fist to the face justified the verdict of guilt under section 245.

It is not essential to a conviction of such charge that the victim be held over a blazing furnace or be fired upon with an atomic weapon. The stroke of a fist or the kick with a

shoe has invalided many a man or caused him to go into decline, or to suffer neurasthenic disorders for his remaining years. ■ But whether the blow of a fist or the kick of a shod foot was of such force as was likely to produce great bodily injury was a question for the jury. (See *People* v. *Hinshaw,* 194 Cal. 1, 17 [227 P. 156] ; *People* v. *Bumbaugh, supra; People* v. *Nudo,* 38 Cal.App.2d 381, 385 [101 P.2d 162].) In *People* v. *Hinshaw, supra,* the court held (p. 16) that the language, "means" and "force," can be interpreted in the disjunctive. In *People* v. *Bumbaugh, supra,* it was held that in view of the injuries sustained by the complainant, as well as the manner of the assault upon her, the jury was authorized to conclude that the manner of making the attack as well as the means used to perpetrate it were properly considered in determining whether the crime was a violation of section 245. Not only did appellant apply severe blows to Nora and Marquez, but he knew when he first saw them that they were suffering from batteries recently dealt out to them. He had the diagnoses of Dr. Ho who had examined them closely, had sutured Marquez' lacerated ear, had inspected the contusions and abrasions of the limbs and bodies of both men. He testified that they looked badly beaten up and that he thereafter struck each of them three or four times and possibly more. Marquez estimated the number of blows administered to him by appellant to have been 10 on each encounter.

■ From such proof it cannot be said that "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ The fact that a reviewing court might reasonably reconcile the innocence of the defendant with the circumstances of the crime does "not warrant interference with the determination of the jury." (*Ibidem.*) ■ Where a jury by its verdict rejects the hypothesis pointing to innocence and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, the court of appeal is bound by the verdict. (*People* v. *Perkins,* 8 Cal.2d 502, 511 [66 P.2d 631].) ■ Before it can reverse a conviction it must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether the jury could not fairly have returned its verdict. (*People* v. *Woo,* 181 Cal. 315 [184 P. 389].)

Appellant cites *People* v. *Fuentes*, 74 Cal.App.2d 737 [169 P.2d 391], in support of his contention that the evidence is insufficient to establish a felonious assault. (§ 245.) The court there reduced the judgment to one for simple assault. The facts justified such reduction. Fuentes struck only one blow, and that with his fist. The only abrasion found on the body of his victim "was not caused by the blow struck by defendant." That is a radically different story from that at bar. McCaffrey's victims were already ailing from previous assaults, yet appellant struck Marquez 30 or 40 times in the face and stomach and knocked Nora down and kicked him violently in the kidney. Appellant appears to regard the punishments suffered by his victims before they came under his protection as good cause for regarding the force he applied as inconsequential. On the contrary, the likelihood that great bodily injury would likely result from his own assaults was increased by the lowered resistance of the men.

### No Error in Rejecting Instructions

Assignment is made of the trial court's rejection of instructions[1] to convict appellant of battery if the jury should find such crime necessarily included in those charged, if the evidence supported such a verdict. Appellant impliedly assumes (1) that the jury found that he never struck or kicked any victim and (2) that battery is "necessarily" included within the crime denounced by section 245. In the first place, the proof is such that this court is constrained by reason thereof to hold that the jury properly found that appellant did more than simply strike his victims, but also that he ferociously and vehemently assaulted them. Simple assault is nothing more than an unlawful attempt to commit a violent injury on another. (Pen. Code, § 240.) ■ A battery cannot be committed without assaulting the victim. But an assault can occur without committing a battery. ■ The gravamen of the crime defined by section 245 is *the likelihood that the*

---

[1]Defendant's Proposed Instruction No. IV:

"You may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, if in your judgment, the evidence supports such a verdict under my instructions.

"To enable you to apply the foregoing instructions, if your findings of fact require you to do so, I instruct you that the offense of assault by means of force likely to produce great bodily injury, of which the defendant is charged in each of the three counts of the indictment, necessarily includes the crime of battery."

Defendant's Proposed Instruction No. V:

"Battery is any wilful or unlawful use of force or violence upon the person of another."

*force applied or attempted to be applied* will result in great bodily injury. ▆▆ Therefore, to make one guilty of violating section 245, evidence of an actual blow is not necessary; but it is requisite that proof be made of an attempt to beat another (1) with a deadly weapon or other instrument not ordinarily defined as a deadly weapon, or (2) by a means or with a force likely to produce great bodily injury. ▆▆ Because a battery is not essential to the crime here charged and because one may violate section 245 without actually striking another, a battery[2] is not a "necessarily" included offense in the crime defined by section 245. Therefore, the trial court properly refused to give defendant's instructions IV and V. (*People* v. *Meichtry*, 37 Cal.2d 385, 390 [231 P.2d 847].)

Evidently, by virtue of an instruction on the necessarily included offense of simple assault, the jury declined to find appellant guilty under count 2 of assault on Jack Wilson. While the State proved that all three men were struck in the interrogation room, and appellant admitted striking them, the jury must have found aggravated assaults committed on Nora and Marquez in their respective cells. Such assaults were denied by appellant. If the jury had believed him, they could have—under the instructions—found him guilty of simple assault only on all three counts. ▆▆ Inasmuch as the instruction on the "necessarily included offense" enabled the jury to find defendant guilty of simple assault, no detriment was suffered by the court's rejection of appellant's proposed instruction V even though it had been a proper instruction. (See Cal. Const., art. VI, § 4½.)

### New Trial Properly Denied

▆▆ Appellant sought a new trial on the ground that some of the jurors were prejudiced against him during their deliberations. To prove his claim he filed the affidavits of three jurors setting forth the declarations of fellow-jurors to the effect that policemen are tough, overbearing, like to beat people.[3] It is argued that such a motion should be granted

---

[2] Note: There seems to be a slight confusion in the Fuentes opinion in that the words assault and battery are used indistinguishably. They are not synonymous. Assault is an attempt to strike; battery is a successful attempt.

[3] "Cops are the type of men that get that job because they like to tell people what to do, and if you don't, they beat you up."

"I know cops are tough and overbearing and they hit and mistreat people just because they are protected by that badge."

"If we were in that jail they would beat us too."

"We should make an example of this guy so it will be a warning to

for the misconduct of a juror on *voir dire* examination where such misconduct was not discovered prior to the verdict.

There is no proof that any juror concealed the true state of his mind at the time of the *voir dire* inquiry. Each juror answered that he had not formed or expressed an "opinion regarding the guilt or innocence" of the persons named over the radio or in the press in connection with reports of police brutality; that he could disassociate any such report from his mind in weighing the guilt or innocence of the accused. The presumption is that such answers were true. There is no evidence to the contrary. So far as the record goes, the only evidence of an unfriendly state of mind on the part of the jurors is their declarations while deliberating *after* having heard the testimony of the young men who had been punished by appellant. While the jurors referred to in the affidavits may have made inappropriate arguments for conviction, their statements do not prove that they held such opinions *prior* to the trial of appellant. The authorities cited by appellant are not apropos. In *People* v. *Galloway*, 202 Cal. 81 [259 P. 332], a new trial was granted, not by reason of anything said by a juror in the course of deliberations, but because a juror was shown to have declared two days before commencement of trial that she would hang anybody that would get drunk, and on the next day stated that if called as a juror, she would hang Galloway. Such prejudice was concealed by the juror at the time she qualified. In *Estate of Mesner*, 77 Cal.App.2d 667 [176 P.2d 70], a will contest, a new trial was granted by reason of a juror's concealment on *voir dire* of his animosity toward the pro-

---

all cops that they can't beat people and get away with it."

"You can't tell anything by their looks—sometimes the best looking cops are the meanest."

"These prisoners were beaten terribly—that's plain to see—so somebody beat them—we should give McCaffrey the maximum verdict for having anything to do with it."

"You read in the paper all the time where policemen beat up somebody or shoot them—and then get off because the police department protects them. That's not right. Policemen aren't entitled to special privileges. So it's our duty to see that McCaffrey doesn't get off."

"They aren't entitled to any special consideration. If it looks like he is guilty, then he's guilty of a felony. We shouldn't waste a lot of time deciding to what degree."

"Those boys said McCaffrey beat them and the grand jury said those were felonies—it's our duty to vote for felonies, not misdemeanors."

That although affiant cannot now recall the names of all the jurors who made one or more of the foregoing remarks, affiant does recall that some of the hereinabove statements were made by Joseph H. Billingsley, one of the trial jurors.

ponent's attorney. Similar reasons were given for ordering new trials in *Williams* v. *Bridges,* 140 Cal.App. 537 [35 P.2d 407]; *Abercrombie* v. *Thomsen,* 59 Cal.App.2d 331 [138 P.2d 701].

The affidavits filed in support of a new trial have no standing. They constitute an attempt by jurors to impeach their verdict. They cannot do so ''by affidavit or by testimony or by extrajudicial statements,'' except in cases of ''chance'' verdicts. (*People* v. *Reid,* 195 Cal. 249, 261 [232 P. 457, 46 A.L.R. 1435]; *People* v. *Chapman,* 91 Cal.App.2d 854, 857 [206 P.2d 4].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.