[Crim. No. 5238.   Second Dist., Div. Two.   Feb. 11, 1955.]

THE PEOPLE, Respondent, v. BRUCE R. HOOKER et al.,
Appellants.

Minsky & Garber for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellants were convicted of having committed assault (under two counts) by means of force likely to produce great bodily injury. (Pen. Code, § 245.) Their motion for a new trial was, by order, duly denied and judgment was entered, remanding them to the custody of the California Youth Authority. They appeal from both the order and the judgment on the grounds of the insufficiency of the evidence and errors of law.

### EVIDENCE SUFFICIENT

While the proof consisted of the testimony of many witnesses, the ultimate facts impliedly found from the total evidence is substantially as follows. Appellants, accompanied by two friends, Lois and Nick, drove westerly along Carson Boulevard in Los Angeles County in Wayne Hooker's maroon automobile near the intersection of Halldale Avenue. At that point they sideswiped a blue and gray sedan. Behind Wayne's car came his brother Jack in a gray car with one Hengler. From his home nearby, a Mr. Dunham and his guest, Mr. Coons, came out on hearing the collision and inspected the blue and gray sedan. Then Wayne spoke to Mr. Dunham, explained that something went wrong with his clutch and he could not stop. At that moment Bruce came up and was immediately joined by Jack. Dunham returned home. Jack asked Coons what he thought about it. Coons replied that he thought the three brothers were drunk. Jack swung at Coons who avoided the blow and Jack fell at a return thrust by Coons. Then, as appellants came at Coons, Jack struck him on the back of the head with a spring shaft about 14 inches long, bearing a series of cylinders, washers and small metal bits. The injury started from the base of his skull and extended six inches toward the front of his head. The cut was jagged and about two and a half inches long. At the blow, Coons fell forward onto appellants. He was then struck on

the head, hands, body, side and groin. Wayne held him against a wall while Jack kicked him in the groin which ''doubled him up.'' He received a bruise on the base of his back, an area 3½ by 2 inches; his left eye was black; his right ear torn and bruised and miscellaneous bruises on his body. When he returned to Dunham's house they saw that a group had gathered and that appellants were beating Roy Patton and pulling on the sleeves of his coat as the victim tried to escape. As Jack neared his brothers, Dunham attempted to prevent his joining in the fight whereupon Jack pursued Dunham but was intercepted by one Thomas; as Coons attempted to stop the beating of Patton, the police arrived.

When Patton arrived at the scene, all three brothers were beating on Coons. He pulled appellants off in an effort to prevent further injury, whereupon Wayne viciously attacked him, and again struck Patton in the face. Jack then took Patton by the shoulders, bent him over in a crouched position, and beat him on the back and stomach. As Wayne held him, Patton was kicked 10 times in the back and three times in the groin and lost his shoe. His body was made sore and his lower lip cut, requiring five stitches. He was of the opinion that all three brothers beat him. His wrist watch was broken into fragments. He saw the spring shaft in the hand of an officer who had arrived.

Mrs. Patton witnessed the beating of Coons by appellants and saw them hold Mr. Patton while Jack kicked him in the stomach and groin several times. They continued to beat him over her protest. She testified that when the officers arrived, appellants fled and were forced to return to the scene.

Officer Rice testified that when Coons told Jack he was pretty drunk to kick an man in the groin, Jack replied he would do it again if he had the chance; that thereupon Wayne threatened use of further force; that when he asked Wayne about the details, Wayne reproved the officers for not getting the other vehicle which had left instead of talking to him. When asked about the fight, Wayne declared his ignorance of a fight. He refused to explain the cut over his own eye. After the occupants of Wayne's car had been removed, the officer found the spring shaft on the rear seat where Jack had been sitting.

Not one of the brothers offered any information about the fight. Moreover, after they had their hands cuffed behind them and were seated in the police car, they got the handcuffs in

front of them and lowered the window of the car. That movement was repeated until Officers Sanders and Rice so seated themselves as to avoid a repetition of appellants' maneuver.

In the police car on the way to jail, neither appellant was cooperative. When Bruce was asked his position in the fight, he disclaimed all knowledge of any fight. When Wayne was asked whither he had been going, he told of his collision and of seeing Jack in a fight, but did not see why police were bringing him to the station when they should be in pursuit of the person who had escaped. Bruce said he had followed Wayne's car; they stopped when he saw Jack in a fight, he went to help his brother; he could see no reason for his arrest; he thought the officers were prejudiced.

Several witnesses testified for the defense. They offered nothing substantially at variance with the facts established by the People's witnesses. The trial court rejected whatever was said on behalf of appellants and determined that they had beaten two citizens who, with peaceful intent, had attempted to prevent unlawful batteries on a public street, and appellants had caused serious bodily injuries to their victims. They had used not only their fists with deadly effect, but had made use of a lethal instrument which scarified a victim. Each of the appellants was a principal in each battery. (*People* v. *Carson,* 155 Cal. 164, 174 [99 P. 970]; *People* v. *Sanders,* 73 Cal. App. 330, 332 [238 P. 372].) ■ From the testimony of witnesses, the court must have found that the force applied did cause ''great bodily injury'' yet the judgment is justified if the proof was such that the force applied was *likely to effect such a result.* (*People* v. *McCaffrey,* 118 Cal.App.2d 611, 616 [258 P.2d 557].) ■ If blows of a fist to the face warrant a verdict under section 245 (*People* v. *Score,* 48 Cal. App.2d 495, 498 [120 P.2d 62]), surely kicks in the stomach, back, groin and body, and a blow with a steel instrument 14 inches long on the head would be ''means of force likely to produce great bodily injury.'' To cause such injury, the explosion of a hydrogen bomb or a fusillade is not essential. Many a person has gone into decline and early demise as a result of a fall or of a blow to the back.

*People* v. *Fuentes,* 74 Cal.App.2d 737 [169 P.2d 391], is not support for appellants' contention. That judgment was reduced from one for a felony to one for simple assault by reason of the facts. Fuentes struck one blow with his fist. The only scratch on his victim's body was not caused by the accused.

■ Where substantial evidence has been submitted to a court that a crime has been committed and that the persons accused were the actors, the reviewing court will not reweigh the evidence. Its sole function in such a situation is "to decide only whether upon the face of the evidence . . . sufficient facts could not have been found by the jury to warrant the inference of guilt . . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].

## THE SPRING SHAFT

Contention is made that the receipt in evidence of the spring shaft was prejudicial; that there was no evidence of its presence at any time during the altercation. Far from it. That object was found by Officer Rice on the rear seat of Wayne's car where Jack sat after the brothers had been removed following the fight. He replaced it and soon thereafter it was taken from the pocket of Jack who had sat on the same seat. Their citations do not support their thesis. In *People* v. *Orloff,* 65 Cal.App.2d 614, 621 [151 P.2d 288], three men demanded money of their victim who was struck one blow and his money was seized. He saw no weapon then, nor was there a witness who saw a weapon near the scene. When the defendants were arrested at their respective homes, weapons were there found. But it was error to receive them against any defendant except him at whose home they were found. In *People* v. *Richardson,* 74 Cal.App.2d 528, 533, 540 [169 P.2d 44], after it was proved that the defendant was armed at the time of his crime, further proof was attempted by showing that a .45 automatic was found in his suit case and that it was similar to the pistol used at the robbery several days prior to the finding of the automatic in the suit case. To make the exhibit admissible under such circumstances, it was necessary to prove that it was the same gun that had been used or, at least, was of the same type, to make it relevant.

In *People* v. *Quinn,* 111 Cal.App. 614, 619 [295 P. 1042], the prosecution erred in introducing a gun found in the defendant's automobile several weeks after the robbery of which he was accused. No connection was proved between the robbery and his gun or between the robbery and his carrying concealed weapons for which he had been arrested.

In *People* v. *Milburn,* 89 Cal.App. 526, 528 [265 P. 285], although proof had been made that the robbery had been

committed with a gun, proof was made that the accused was armed with a dagger when arrested.

## No Prejudicial Errors at Trial

■ There is no problem about the admission of the spring shaft. To Mr. Coons, the blow felt like one administered with a hard object; it left a jagged cut such as the spring shaft would have made; the blow was from behind and Jack Hooker was the only person behind Coons at the very time appellants were fighting Coons in front; the shaft was taken from defendants immediately following the fight and at the same place.

■ It is the general rule that where a crime has been committed by use of a deadly instrument and the accused is arrested soon thereafter, if the wounds inflicted might reasonably have been caused by the device taken from the defendant or from among his possessions, it is relevent evidence. (*People* v. *McDowell,* 64 Cal. 467 [3 P. 124].) Positive identification of a weapon is not required. (*People* v. *Ferdinand,* 194 Cal. 555, 563 [229 P. 341].) In the case at bar, the introduction of the spring shaft was proper in view of its presence as a part of the circumstances surrounding the arrest. (*People* v. *Beltowski,* 71 Cal.App.2d 18, 23 [162 P.2d 59]; *People* v. *Mason,* 65 Cal.App.2d 5, 10 [149 P.2d 742].) Because the facts above recited tend to connect the spring shaft with the beating of the witness Coons, it was properly received in evidence. Appellant's statement that every witness denied that "such an instrument" as the spring shaft was present during the altercation does not square with the record. It was taken by the police from appellants at the scene; and some instrument of its type scarified Mr. Coons' head. If counsel for the prosecution referred to it as a "sep," no record before this court proves that an objection to such term was made or that any motion was made to exclude it; or that an "application was made for additional record." (See rule 36, subd. (b), Rules on Appeal.)

■ Where assignment has been made of any occurrence as prejudicial, the absence of a record is no excuse for appellant's failure to supply the record. (*People* v. *Chessman,* 35 Cal.2d 455, 460 [218 P.2d 769, 19 A.L.R.2d 1084].)

■ Assignment is made of the receipt of testimony "about Wayne Hooker's conduct after arrest," contending it was immaterial. Officer Sanders testified that they handcuffed the hands of Bruce and Wayne behind them and that they

brought their hands up in front of them; that they were re-cuffed in the same manner. Officer Rice testified that Wayne immediately got his hands in front of him, began working the window and yelling at the people. From such facts, it was not an unreasonable inference that Wayne was attempting to flee. Such evidence is admissible as proof of intended flight.

Inasmuch as flight is proof of consciousness of guilt, the evidence of the behavior of the accused is always "the proper subject of inquiry." (*People* v. *Flannelly*, 128 Cal. 83, 87 [60 P. 670]; *People* v. *Dabb*, 32 Cal.2d 491, 500 [197 P.2d 1]; *People* v. *Gryszkiewicz*, 88 Cal.App.2d 230, 235 [198 P.2d 585].)

### No Prejudice Caused by Prosecutor

Assignment is made of the prosecutor's "misconduct in his examination of the witnesses and deprived appellants of a fair and impartial trial." It is then argued that the prosecutor referred to appellants as "rat-packers" and "hoodlums" and indicated the danger of allowing such persons on the street. There is no evidence in the record that such terms were used by the prosecutor. At any rate, it was appellants' duty to have such language included in the record. (Rules 33, subd. (a), 36, subd. (b), Rules on Appeal.) Appellants contend that in their argument for a new trial, such misconduct was charged and not denied. Such occurrence would not warrant a reversal if proved. No assignment of misconduct was made; nor request for the jury to be instructed to disregard the remarks. Even more vicious terms were applied to the accused in *People* v. *Brancato*, 83 Cal.App.2d 734, 740 [189 P.2d 504], and in *People* v.. *Glaze*, 139 Cal. 154, 159 [72 P. 965]. The contentions of the appellants in those cases were rejected; no request had been made for the jury to be instructed to disregard the language complained of.

Complaint is made that when Patton was asked about the altercation, his reply was "He jumped me . . . he attacked." It is asserted that the latter term is a conclusion and should have been stricken. It is a statement of a fact and correctly describes the behavior of Wayne toward Mr. Patton who was attempting to terminate the beating of Mr. Coons by pulling Wayne and Bruce off him. Instead of a hostile thrust to the face and kicking him in back and stomach, Wayne should have thanked Mr. Patton.

The return of the brothers to their automobile and their

attempt to depart when the police arrived might very reasonably be found to have been "flight."

The use of the term "conspiracy" by the prosecuting attorney was not exactly appropriate but it was not prejudicial. Both appellants were charged as principals; evidence was introduced against them as having committed batteries on the two complaining witnesses. Such evidence was believed by the court which agreed that there "was no showing of conspiracy." Therefore, the implied finding was that each participant was a principal.

Assignment is made of the prosecutor's use of the terms (1) unprinted dictionary; (2) whether Bruce lied to Officer Thornberry; (3) whether alcohol caused him to be angry and fight; (4) whether the witness Hengler saw something there (at the scene) he did not wish to get involved in. As to certain of the above items, the objections were sustained and the terms stricken. In those instances where no objection was made or where the court did not strike the allegedly offensive word, no motion was made for the jury to be instructed to disregard the language used. All questions propounded by the deputy and all terms used by him appear to have been used solely to develop the true facts. Not every lawyer retained by the state can frame his questions like a Webster.

If his behavior at the bar is free from venom against the accused; if he uses no terms designed solely to create prejudice against the accused; if he persists in an orderly procedure with the view of presenting only the facts against the prisoner, it cannot be said that his conduct was prejudicial. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 693 [161 P.2d 833].) Since no prejudice appears to have been suffered by virtue of the prosecutor's conduct, it was not reversible error. (*People* v. *Estrella*, 116 Cal.App.2d 713, 718 [254 P.2d 182].)

The order remanding appellants to the Sheriff of Los Angeles County to be held under the jurisdiction of the Youth Authority is affirmed.

McComb, J., and Fox, J., concurred.