[No. 46369-1-I. Division One. September 10, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL T. PIERRE, *Appellant*.

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David M. Seaver, Deputy,* for respondent.

APPELWICK, J. — Miguel Pierre appeals his first degree assault conviction. A rational trier of fact could find that a

defendant's repeated kicking of a defenseless victim in the head is "force or means likely to produce great bodily harm or death" in violation of the first degree assault statute. RCW 9A.36.011(1)(a). We affirm.

## FACTS

On March 27, 1999, Said Abasheikh, a 16-year-old boy, rode his bicycle to a store in his Seattle neighborhood. Miguel Pierre and his three friends, Pulefano Ativalu, Michael Gallow, and Michael Anderson, confronted Abasheikh outside the store. Gallow struck Abasheikh with a stick and took Abasheikh's bicycle from him. They pulled Abasheikh into their car and drove off with him. Two women witnessed the incident.

Later that day, Abasheikh and his uncle's friend, Molid Mohamed, drove to the same store where the earlier dispute had occurred. Abasheikh remained in the passenger seat while Mohamed walked to the store to buy a telephone calling card. Pierre and his friends were also in the area of the store. They ran toward Mohamed. The group pointed to Abasheikh and shouted, "[T]his is the guy." Ativalu grabbed Mohamed's jacket. He then pushed Mohamed in the chest, asking him, "Do you have a problem?" Another guy came up and pushed Mohamed, preventing him from entering the store. Mohamed saw a car parked next to his. There were other men sitting in the car repeatedly yelling "get" Abasheikh. Mohamed eventually found his way into the store and called 9-1-1.

Meanwhile Abasheikh remained in the car and attempted to lock himself in. Before he could do so, Pierre and his friends began opening the car doors. Abasheikh crawled out of the car on the driver's side. Someone punched him, and he fell back into the car. Abasheikh was then pulled out by his feet. His head hit the concrete. As Abasheikh lay defenseless on the ground, Ativalu's friends kicked and stomped Abasheikh's head repeatedly. Pierre later told the

police that "[e]ach one of them kicked the kid in the head about 15 times."

The State charged Pierre, Ativalu, Gallow, and Anderson with first degree assault. Gallow and Anderson pleaded guilty. Pierre and Ativalu proceeded to trial. At trial, Mohamed testified that there were about 10 guys at the scene. There was a crowd surrounding Abasheikh, who was lying on the ground. Although Mohamed could not clearly see Abasheikh through the crowd, he saw the men repeatedly kick at Abasheikh. By the time the kicking stopped, Abasheikh was lying facedown. He was bleeding, convulsing, and unresponsive.[1] Mohamed knelt down and sobbed. He lifted Abasheikh's bloody head and laid it in his lap. Ativalu angrily returned to the scene, waving his arm in the air, and thumping at his chest. He said to Mohamed, "[W]hat are you going to do . . . mother-fucker?" Mohamed continued to sob and replied that he did not want any trouble. Mohamed was able to identify Pierre as one of the individuals in the crowd, and stated that Pierre and Ativalu were the last to leave Abasheikh's body.

The store clerk testified that "five men were trodding [Abasheikh] on his head and his neck and his body. . . . They kept kicking him." The clerk demonstrated that there were two types of kicking action. One action was like kicking a ball while standing in a horizontal position. The other action was a "stepping down or tromping action." The clerk was able to view blood around Abasheikh's mouth and clothing. According to the clerk, the entire incident lasted for about 7 minutes, and the kicking of Abasheikh lasted for about 30 seconds.

Dr. Richard Harruff testified that as a result of the assault Abasheikh suffered from diffused axonal injury, and not localized injury. Localized injuries can be pinned to a certain area of the brain, whereas diffused axonal injury is throughout the brain. Diffused axonal injury "occurs through a mechanism that involves rapid rotation of the

---

[1] The record does not indicate at what point during the beating Abasheikh became unconscious.

head from side to side or like in a shaking no-type of direction or just swinging back and forth, but a rotational effect." The type of injury suffered by Abasheikh is not common where the individual is simply beaten. According to Dr. Harruff, an unconscious victim was more likely to sustain brain damage from kicks to the head than would a person who was conscious and had muscular tone to naturally resist the blows.

Dr. Harruff concluded that Abasheikh's injury was probably caused by the repeated kickings to the head, rather than his head hitting the concrete when someone dragged him out of the car by his feet. Dr. Harruff further stated that either a single blow or multiple blows could have caused the brain injury, but that there were "too many variables" to allow him to make the distinction between the two possibilities. Nevertheless, he opined that the number of kicks significantly increases the likelihood that serous brain injury will result. Dr. Harruff stated that "a lot of force" was applied to Abasheikh's scalp and agreed with the prosecutor's characterization that the force must have been "fairly violent."

Dr. Irene Young testified that in addition to the injury to his brain, Abasheikh's lungs had been punctured. He required a ventilator in order to breathe for three months. Dr. Young explained Abasheikh's recovery and his extensive rehabilitative therapy. According to Dr. Young, the assault reduced Abasheikh's vocabulary and comprehension level to that of a seven-year-old. Abasheikh is now permanently mentally retarded.

At the close of all the evidence, the trial court instructed the jury on alternative means of guilt for first degree assault. The instructions provided that Pierre could be found guilty if the assault resulted in "great bodily harm," RCW 9A.36.011(1)(c); or if Pierre, with the "intent to inflict great bodily harm: (a) [did] [a]ssault[] another with . . . force or means likely to produce great bodily harm or death," RCW 9A.36.011(1)(a). The jury was also given an accomplice liability instruction, thereby allowing the jury to

find Pierre culpable for the acts of his accomplices.

The jury found Pierre guilty by general verdict. By special interrogatory, the jury unanimously agreed that Pierre had used force or means likely to inflict great bodily harm, but did not unanimously agree that great bodily harm was inflicted upon Abasheikh. The trial court sentenced Pierre within the standard range to 160 months of incarceration.

Pierre appeals, claiming that there is insufficient evidence of first degree assault, and that the State's submission of the assault to the jury violated his federal and state constitutional rights.

## ANALYSIS

### I. Sufficiency of the Evidence

Pierre challenges his conviction, claiming that there is insufficient evidence that he used "any force or means likely to produce great bodily harm or death" and that he acted "with intent to inflict great bodily harm." RCW 9A-.36.011(1)(a).

■ Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements proved beyond a reasonable doubt. *State v. Hendrickson*, 129 Wn.2d 61, 81, 917 P.2d 563 (1996).

Pierre claims that repeatedly kicking an individual in the head is not proof of "force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). In support of his argument, Pierre points out that no published opinion in this State confirms that a defendant has been convicted of first degree assault by kicking an individual.

■ While first degree assault typically involves the use of a firearm or other deadly weapon, the absence of such a weapon does not preclude the State from charging a defendant with first degree assault. The statute does not restrict the means to use of a firearm or deadly weapon; rather, the

use of either of them is an alternate method of first degree assault. The first degree assault statute provides:

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
>
> (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death; or
>
> (b) Administers, exposes, or transmits to or causes to be taken by another, poison, the human immunodeficiency virus as defined in chapter 70.24 RCW, or any other destructive or noxious substance; or
>
> (c) Assaults another and inflicts great bodily harm.
>
> (2) Assault in the first degree is a class A felony.

RCW 9A.36.011. Thus, the absence of a firearm or weapon during the commission of the crime does not shield Pierre from a first degree assault charge or conviction.

■ The conviction must stand if there is sufficient evidence for a jury to conclude that the force used was likely to inflict great bodily harm. " 'Great bodily harm' " is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A-.04.110(4)(c).

Other jurisdictions that have dealt with facts similar to the present case have held that kicking alone can constitute force or means likely to produce death or great bodily injury. *See People v. Hooker*, 130 Cal. App. 2d 687, 279 P.2d 784 (1955); *State v. McKeehan*, 91 Idaho 808, 430 P.2d 886 (1967); *State v. Lavallee*, 104 N.H. 443, 189 A.2d 475 (1963); *State v. Bonner*, 241 Or. 404, 406 P.2d 160 (1965); and *Ohlrich v. State*, 162 Tex. Crim. 502, 287 S.W.2d 478 (1956). The California Appellate Court explained:

> It is not essential to a conviction of such charge that the victim be held over a blazing furnace or be fired upon with an atomic weapon. The stroke of a fist or the kick with a shoe has invalided many a man or caused him to go into decline, or to

suffer neurasthenic disorders for his remaining years. But whether the blow of a fist or the kick of a shod foot was of such force as was likely to produce great bodily injury was a question for the jury.

*People v. McCaffrey*, 118 Cal. App. 2d 611, 616-17, 258 P.2d 557, 561 (1953).

By observing the men who had been assaulted the jury—as reasonably intelligent men and women—could fairly estimate the likelihood of the batteries to "produce great bodily injury."

*McCaffrey*, 258 P.2d at 561.

 Contrary to Pierre's position, kicking alone can constitute force or means likely to produce great bodily harm. He claims that in order for this court to affirm the jury verdict, we must make the following logical leap: presume that great bodily harm was sustained, and that because great bodily harm was sustained, Pierre necessarily used force or means likely to produce that harm.

We acknowledge that the jury acquitted Pierre on having caused great bodily harm to Abasheikh. The jury's acquittal of Pierre on those grounds does not mean that the jury may not look to the extent of the injuries. In determining whether the kicking was likely to inflict great bodily harm, we hold that a jury may consider the manner in which the defendant exerted the force and the nature of the victim's injuries to the extent that it reflects the amount or degree of force necessary to cause the injury. *See State v. Huddleston*, 80 Wn. App. 916, 921-22, 912 P.2d 1068 (in determining whether this alternate method of first degree assault has been satisfied by the State's evidence, this court previously has looked to the conduct of the defendant and the nature of the victim's injuries), *review denied*, 130 Wn.2d 1008 (1996).

The jury in the present case heard the details of the crime from Mohamed, the store clerk, and other eyewitnesses. Testimony established that Abasheikh was on the ground during the assault. Multiple parties continued to kick at his head and body. No evidence indicates that Abasheikh

blocked any of the kicks. Rather, the evidence shows that he lay bleeding, unresponsive, and defenseless. Each of men surrounding Abasheikh kicked him about 15 times. The accomplice liability instruction allowed the jury to hold Pierre responsible for all the acts of his friends, thus holding him responsible for the estimated 60 kicks. *See State v. Galisia*, 63 Wn. App. 833, 840, 822 P.2d 303 (1992) (defendant need not participate in each element of the crime—it is sufficient if a person intends to facilitate another in the commission of the crime by providing assistance through his presence or his act). The jury watched the store clerk demonstrate the two different types of kicking action: the ball-kicking action and the tromping-kicking action. There was further evidence that Pierre was one of the last men to leave, giving the jury a reasonable inference that he was one of the last who continued to kick at Abasheikh's head.

The evidence showed that all of the above occurred with such violent force as to cause permanent brain damage. Clearly a rational trier of fact could find that Pierre used force or means likely to produce great bodily harm when he repeatedly kicked at the victim's head as though it were a ball, and caused severe and permanent brain damage.

■■ Pierre also claims that no rational trier of fact could conclude that the act of kicking the victim established beyond a reasonable doubt that he had any intent to cause great bodily harm. Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances. *State v. Louther*, 22 Wn.2d 497, 502, 156 P.2d 672 (1945).

At oral argument, counsel for Pierre conceded that the accomplice liability instruction would hold him culpable for the intent of his accomplices. We accept the concession. Under the facts of this case, it is difficult to avoid an inference that Pierre could have possibly intended anything other than intending great bodily harm when he continued to kick at Abasheikh's head. We conclude that a rational

trier of fact could have found that Pierre had the requisite intent for first degree assault.

## II. Prosecutor's Concerns about the Sufficiency of the Evidence

Pierre also claims the prosecutor conceded at trial that the State lacked evidence to convict him of first degree assault for his use of force or means likely to produce great bodily harm. We reject his characterization of the prosecutor's comments about the State's evidence.

At the close of the evidence, the trial court asked the prosecutor why he felt a special verdict form was necessary. The trial court was inclined to deny the State's use of the special verdict form. The prosecutor then expressed concern that an appellate issue would arise if the jury failed to disclose which means of guilt it unanimously agreed upon. The prosecutor stated that he was "not sure" that the jury would find sufficient evidence that Pierre used any force or means likely to inflict great bodily harm. The prosecutor was certain that the jury would find Pierre guilty under the other ground, which required a finding of actual great bodily harm. Based on the comments, Pierre claims he was subjected to seizure in violation of the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution, and that he was deprived of due process in violation of article I, section 3 of the state constitution. His claim has no merit.

There was sufficient evidence to bring the first degree assault charge to the jury. The prosecutor's subjective concern that the jury might not find sufficient evidence to convict beyond a reasonable doubt is not the standard in determining whether a case is properly before a jury. Even the case cited by Pierre recognizes that all that is required is probable cause. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). Indeed, the *Albright* Court held that a defendant's constitutional right includes the right to be free from prosecution lacking probable cause.

388

*Albright*, 510 U.S. at 271. Pierre was not unlawfully prosecuted.

We affirm.

GROSSE and WEBSTER, JJ., concur.