[Crim. No. 641.   Fourth Dist.   May 28, 1946.]

THE PEOPLE, Respondent, v. FRANK FUENTES,
Appellant.

Albert H. Ford for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

MARKS, J. — This is an appeal from a judgment pronounced on defendant after he had been convicted by the trial judge, sitting without a jury, of committing an assault on the person of Joe Garcia "by any means of force likely to produce great bodily injury" as that crime is defined by section 245 of the Penal Code. He was sentenced to serve the term prescribed by law in the penitentiary. Defendant contends that the evidence shows him guilty of battery as defined in section 242 of the Penal Code but not of the crime of which he stands convicted.

Joe Garcia and defendant were both residents of the city of Banning in Riverside County. The evidence indicates that there had been trouble in Banning between Mexican Nationals and Americans of Mexican descent. Garcia and defendant were both citizens but some friends of Garcia had been associating with the Mexican Nationals.

On the evening of December 16, 1945, Garcia, his wife and two friends (the first name of one of them was Saturnino), had a few drinks of beer in some of the resorts in Banning. In one of them they met defendant who was in the company of some friends. Some words were exchanged between the two groups but nothing very serious occurred although some one in defendant's group claimed to have been threatened with a beer bottle, struck with a salt shaker and called a vile name.

Garcia and his group left and went to the home of Saturnino where they each drank a glass of wine. While they were there some one threw a rock through the window. Defendant and his friends denied doing this and no effort was made to attribute this act to any of them.

Garcia and his wife left the house of Saturnino and proceeded on their way home. They had to follow a path which crossed the Southern Pacific Railway. When they reached the tracks they saw defendant's friends there. Some one mentioned the name "Saturnino" and defendant came up and struck Garcia with his right fist. Garcia slumped to the ground with his head coming to rest on or against one of the railroad rails. He was knocked unconscious and his wife, assisted by two of the men, carried him the short distance to the gate of his home by which time he had regained consciousness. His wife then assisted him into the house. Garcia had a small laceration on the right side of his head about two-thirds of the way between the right ear and the crown of his head. A physician who examined him on December 18, 1945, described what he found as follows:

"The patient was brought in by his father-in-law, and he took the chair in the examination and treatment room, and indicated the treatment he desired—which was for an injury to the right side of his head. I examined it and found that he had a lacerated cut. The edges of the cut were not clean and sharp, but were rather rough and irregular, and there was a bloody crust covering the wound. There was some swelling around the cut, indicating that there was bruising as well as cutting—suggesting that the instrument was not sharp, but was blunt. Q. How long was the cut? A. Between an inch and an inch and a quarter. Q. Could you tell how deep it was? A. No, because it was covered by this crust. It must have involved perhaps a considerable portion of the scalp, because of the fact that it bled as it did. It had bled freely, they told me, and there was some oozing—enough to make this

bloody scab. Q. After your examination, what did you do? A. I treated it. There was not a great deal to do. It did not cut enough to make it necessary to remove that cut (crust) and put in stitches or clips, so I just cleaned it up, and applied some antiseptic, and let it go. Q. Were you able to form an opinion as to what sort of an instrument or object had caused the cut or injury? A. Something blunt and very hard. Q. Could that have been caused by a man's hand or fist? A. I do not think so. . . . Q. Could the injury have resulted from falling and coming in contact with something hard? A. Yes."

No one saw anything in defendant's hand when he struck Garcia. He and two witnesses testified that he had nothing in it. He also testified that he struck Garcia in the mouth or near the end of the lips which was corroborated by other witnesses. All witnesses agree that he struck Garcia with his right hand. Mrs. Garcia testified that it was a swinging blow passing over the shoulder.

One witness described in detail the positions of the actors when the blow was struck, and was not contradicted. Mrs. Garcia was standing close to her husband on his left, probably with their arms entwined. The witness was standing immediately in front of Garcia facing him and about one and one-half feet away. When the name "Saturnino" was spoken defendant came up on the right side of the witness and struck Garcia with his right fist. This would place defendant in front of Mrs. Garcia and slightly to Garcia's left. Defendant admitted striking the blow with all his force. If the testimony of any of the witnesses is to be believed it would place the blow landing on the left side of Garcia's head, according to Mrs. Garcia, or on the left side of his mouth or jaw according to the other witnesses. The abrasion was on the right side of Garcia's head. That it was not caused by the blow struck by defendant seems to be demonstrated.

█ It is the theory of the prosecution that defendant had a rock or other similar weapon in his hand when he struck Garcia, and that the cut and bruising was caused by such a weapon. Defendant's theory is that he struck Garcia in the mouth or on the jaw knocking him out; that when Garcia slumped to the ground his head struck the rail which caused the wound. The theory of the prosecution seems highly improbable because the blow was landed on the left side of his head or mouth and the cut was on the right side of his head. The same evidence strongly supports the theory of defendant while contradicting the theory of the People.

The conclusion does not necessarily relieve defendant from punishment for the results of his unprovoked assault. That the blow might knock out Garcia causing him to fall and strike the rail was a result which was foreseeable for which defendant could be held responsible. (*People* v. *Score,* 48 Cal.App.2d 495 [120 P.2d 62].)

It is thoroughly settled in this state that an assault by means of "force likely to produce great bodily injury" (Pen. Code, § 245) may be made by the use of the hands or fists (*People* v. *Bumbaugh,* 48 Cal.App.2d 791 [120 P.2d 703], and cases cited) and that what kind of an assault is likely to produce great bodily injury is generally a question of fact to be determined by the jury. (*People* v. *Nudo,* 38 Cal.App.2d 381 [101 P.2d 162].) However, the power of the jury in that respect is not unrestrained and its conclusion must be supported by the evidence.

Battery "is any willful and unlawful use of force or violence upon the person of another," (Pen. Code, § 242), and is punishable as a misdemeanor. When the force used in committing the battery is "likely to produce great bodily injury" it becomes a felony if a penitentiary sentence is imposed as was done here. (Pen. Code, § 245.) That the Legislature intended to define two separate and distinct crimes is clear from the use of two separate code sections and the different penalties for each. Of course the dividing line between the two is not always distinct but we do not believe that condition exists here.

A blow to the jaw sufficient to knock out the recipient is not unusual in fistic encounters and such a result from one blow is not ordinarily considered a great bodily injury for it is usual for the victim to recover consciousness and the use of his normal faculties within a short time which Garcia did. This leaves the wound on the head to be considered. Under the facts of this case the measure of the likelihood of great bodily injury is the result produced by the blow and fall, for the likelihood of great bodily injury from the blow is demonstrated by the injury actually inflicted.

The abrasion on the head and the bruise surrounding it has been described in detail in the quoted testimony of the attending physician. There is no other description of it in the record. The cut was not over one and one-quarter inches long and of an undetermined depth. It was not severe enough

to require suturing. It seems unreasonable to describe it as a great bodily injury.

■ This conclusion does not relieve defendant from the results of his admitted and unprovoked assault on Garcia. There can be no question that he is guilty of the crime of battery and that he should receive punishment therefor. As battery is a crime included in the one charged we may reduce the judgment and direct the resentence of defendant. (*People* v. *Kelley,* 208 Cal. 387 [281 P. 609] ; *People* v. *Cowan,* 38 Cal.App.2d 231 [101 P.2d 125, 135].)

The crime for which defendant was found guilty and sentenced is reduced from assault by force likely to produce great bodily injury, as defined in section 245 of the Penal Code, to battery as defined in section 242 of the Penal Code, with instructions to the trial court to pronounce judgment on defendant for the lesser offense.

Barnard, P. J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 24, 1946. Edmonds, J., and Schauer, J., voted for a hearing.