[Crim. No. 19554. Second Dist., Div. Four. Nov. 2, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN RICHARD RUPERT, Defendant and Appellant.

## COUNSEL

Stuart W. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Allan J. Goodman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant John Rupert was charged with one count of murder (Pen. Code, § 187), and one count of assault by means of force likely to produce great bodily injury (Pen. Code, § 245). Defendant pled not guilty and not guilty by reason of insanity. On defendant's motion Dr. Andre Tweed was appointed to examine him pursuant to section 730 of the Evidence Code. Dr. Miles Gullingsrud and Dr. Jaime Amselem were appointed to examine defendant pursuant to section 1027

of the Penal Code. The jury found defendant guilty of voluntary manslaughter, and guilty of assault by means of force likely to produce great bodily injury. Defendant's motions for a new trial and for probation were both denied. Defendant was sentenced to state prison for the terms prescribed by law, both sentences to run concurrently. Defendant appeals from the judgment of conviction. We affirm the judgment on the homicide count, but reverse the judgment on the other count.

The facts are basically undisputed.

Defendant and Lynda McNeal had dated for approximately three years before the crimes in question, during which time Lynda lived with her mother in Santa Monica. In September of 1969, defendant was terminated from his employment with the California Highway Patrol. The apparent basis for his dismissal was an incident whereby defendant used force on a person he had stopped for a traffic violation, in addition to other similar encounters. Prior to his termination, defendant had an excellent personality and related well to Lynda and her mother. Testimony by Lynda and three defense witnesses indicated that, subsequent to September of 1969, defendant became distressed, bitter, and argumentative. On four occasions defendant hit or kicked Lynda, the most recent occasion being two weeks prior to the death of Mrs. McNeal.

Because defendant and Lynda were planning marriage and because they were having difficulties, arrangements were made to see a marriage counselor; however, the meeting never occurred. During this time defendant was extremely jealous of other men who saw Lynda.

On May 16, 1970, Lynda and defendant had a conversation about a forthcoming dinner party which Lynda's mother was giving and to which defendant had not been invited. She asked him to come, but he declined because "it wasn't meant for him to come and he would have felt out of place because of the way he was invited."

The next day, the day of the dinner party, defendant and Lynda had three or four conversations about the party at which time defendant appeared quite angry. Defendant stated that Lynda would "pay for it." Because of his past actions, Lynda considered this statement as a threat that she would die. On May 17th (the same day) Lynda saw defendant drive by her house three times during the dinner hour.

At 6 p.m. Lynda took three of the dinner guests to UCLA to show them the campus. Her car was bumped a few times by defendant's car and defendant continued to follow her around the UCLA campus and back to the McNeal residence.

As Lynda exited from her car defendant asked to speak to her. Mrs. McNeal came from the house and asked her daughter to go inside. She then told defendant to either come in or leave, and defendant left.

At approximately 9 p.m. defendant visited his friend, William Walters, and asked to borrow his black Pontiac. Mr. Walters testified that defendant showed no noticeable signs of intoxication.

After Mrs. McNeal and her daughter went to sleep (at approximately 12 midnight) Lynda was awakened by whining coming from her mother's bedroom. She entered the bedroom and saw a person, later identified as defendant, standing over her mother who was in bed. When Lynda tried to pull defendant from her mother, defendant struck her at least five times, knocking her to the floor. She was additionally struck while on the floor. She sustained several cuts and a concussion, and at the trial she had a scar on her left cheek. Defendant's statements to the police indicated that he broke into the home to convince Mrs. McNeal to allow him to see Lynda and not to interfere in their relationship. He further stated that he only intended to scare Mrs. McNeal, not kill her. After she screamed, he became excited and lost control of himself. When he tried to mug her with his hand, she kept screaming and defendant stabbed her. He was not aware of Mrs. McNeal's death until so informed by his mother.

Lynda testified that a fire was started at her mother's bed after defendant had walked around it. Defendant's statement confirmed that he had started the fire.

The statement of defendant, referred to above was given to police officers after defendant was advised of his *Miranda* rights. After waiving those rights, he voluntarily spoke with the officers. Defendant additionally stated that, because Mrs. McNeal would not let him talk to Lynda, he took a knife with him to the residence as a method of persuasion. Because his own car was known so well in the neighborhood, he borrowed Mr. Walter's car, parked the car at the rear of the house, and broke into the residence through a living room window. Although he confessed to the killing of Mrs. McNeal, he stated that he never intended to hurt anyone. When he returned the car to Mr. Walters at 3:30 a.m., he asked to borrow money to go to "Frisco," and received $35.

Testimony indicated that defendant had consumed various amounts of alcohol on the day and evening before the 3 a.m. killing of Mrs. McNeal. Dr. Jaime Amselem and Dr. Miles Gullingsrud, court-appointed psychiatrists, testified that defendant did not have the mental capacity to deliberate, to form a specific intent, or to premeditate. Dr. Amselem further

testified that defendant could not harbor malice as he was in a paranoid state manifested by delusions that he had been slighted, persecuted, and manipulated by the victim. Nor could defendant meaningfully reflect upon the gravity of his actions. Dr. A. R. Tweed testified that defendant's mental capacity to form a specific intent to murder was "sufficiently impaired as a result of the excessive intake of alcohol" at the time of the act. He described defendant's personality as explosive with paranoid features, and further stated that defendant could not have deliberated, premeditated, or harbored malice due to his intake of alcohol.

Francis Turney, a criminalist employed by the Los Angeles County Sheriff's Criminalistics Laboratory, analyzed the relationship between alcohol consumption and intoxication. Using various hypotheticals suggested by both the prosecution and the defense, Mr. Turney concluded that a person who had consumed certain amounts of alcohol at specific times, would not be legally under the influence of alcohol at 3 a.m. the next morning.

Defendant argues that the evidence was insufficient to support the jury verdict of assault by means of force likely to produce great bodily injury.

In support of his position, defendant cites *People* v. *Fuentes* (1946) 74 Cal.App.2d 737 [169 P.2d 391], where a verdict of assault (pursuant to § 245 of the Pen. Code) was reduced to battery.[1] (Pen. Code, § 242.) In *Fuentes,* the victim was struck with a fist which caused a lacerated cut on the right side of his head. In reaching its conclusion, the court looked to the injuries actually inflicted, finding that a blow to the jaw is not ordinarily considered a great bodily injury. (*People* v. *Fuentes, supra,* at p. 741.)

The rule established in *Fuentes,* has been disapproved in recent cases. In *People* v. *Muir* (1966) *supra,* 244 Cal.App.2d 598, 604, this district held that the statute in question focuses on the type of force *likely* to cause great bodily injury rather than the injury which actually results.[2] We believe this to be the better rule. It is well established that the crime of assault pursuant to section 245 may be committed by means of the hand or fist alone. (*People* v. *Tallman* (1945) 27 Cal.2d 209, 212 [163 P.2d 857]; *People* v. *Chavez* (1968) 268 Cal.App.2d 381, 384 [73 Cal.

---

[1]This action by the court in reducing the charge to battery has been judicially recognized as error; since battery is not necessarily included in the offense of assault. (*People* v. *Muir* (1966) 244 Cal.App.2d 598, 603, fn. 4 [53 Cal.Rptr. 398]; *People* v. *Mueller* (1956) 147 Cal.App.2d 233, 239 [305 P.2d 178].)

[2]See also: *People* v. *Hamilton* (1968) 258 Cal.App.2d 511, 518 [65 Cal.Rptr. 803].

Rptr. 865]; *People* v. *Hamilton* (1968) 258 Cal.App.2d 511, 518 [65 Cal.Rptr. 803].)

▮ Lynda McNeal testified that, when she entered her mother's bedroom to intercept defendant's knife attack, defendant knocked her to the floor. She sustained several cuts on her head and face, and presently has a scar on her left cheek. In addition, defendant stated that he "thought" he hit Lynda McNeal with his fist and with a coffee pot. However, there was some doubt by both Lynda and defendant as to whether she had been struck with the coffee pot. Nevertheless, the possible use of a pot is immaterial, as there was direct evidence that defendant had *at least* used his hands to injure the victim. ▮ The extent of the injury actually inflicted, as well as the nature of the assault, are questions of fact for the jury to determine. (*People* v. *Wells* (1971) 14 Cal.App.3d 348, 358 [92 Cal. Rptr. 191]; *People* v. *Score* (1941) 48 Cal.App.2d 495, 498 [120 P.2d 62].) The decision of the trial court that the hand or fist of defendant did produce the sustained injury will not be disturbed on appeal. (*People* v. *Wells, supra,* at pp. 358, 359; *People* v. *Score, supra,* at p. 498.)

▮ While the evidence is sufficient to support the jury's finding of assault by means of force likely to produce great bodily injury, the jury might also have reasonably concluded that no such force was used. If the jury so concluded, a verdict of guilty of simple assault would have been proper. Simple assault is an offense necessarily included in the offense of assault with force likely to produce great bodily injury.[3] Accordingly, defendant urges that the trial court erred in not adequately instructing the jury as to simple assault as a lesser and included offense. The trial court did give to the jury an accurate instruction defining the offense of simple assault. However, while it had instructed the jury as to lesser and included offenses under the homicide count, it nowhere told the jury that it might consider simple assault, as so defined for it, as being a lesser and included offense under the other count. The record does not show that defendant requested such additional instruction. The problem before us is whether the court was under a duty to give that additional instruction *sua sponte.* We conclude that it was.

▮ It is now settled that a trial court must instruct, *sua sponte,* on lesser and included offenses whenever the evidence would support such a determination. (*People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82

---

[3]"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.)

"Every person who commits an assault upon the person of another . . . by any means of force likely to produce great bodily injury is punishable by imprisonment . . . ." (Pen. Code, § 245.)

Cal.Rptr. 618, 462 P.2d 370].) ■ The problem then narrows down to whether that duty is fulfilled by a mere definition of the included offense without an additional instruction specifically telling the jury what use it might make of that instruction. We conclude that *People* v. *Hood, supra,* necessitates a holding that such a duty existed here. In *Hood* the defendant was charged with assault with a deadly weapon on a police officer, in violation of subdivision (b) of section 245 of the Penal Code. Under the evidence, the jury might have found him guilty of assault with a deadly weapon, in violation of subdivision (a) of that section, or of simple assault. The instruction given to the jury told it that it might consider the alternative of simple assault, but it did not advise them of the other alternative. The conviction was reversed because of that omission. The same reasoning applies in the case at bench.

■ Defendant next urges that the court erred in refusing to permit Lynda McNeal, a lay witness to express her opinion as to defendant's sanity. It is settled that the opinion of an intimate acquaintance has no greater evidentiary value than the reasons underlying it. (*People* v. *Boggs* (1938) 12 Cal.2d 27, 39 [82 P.2d 368]; *Estate of Downey* (1942) 51 Cal.App.2d 275, 284 [124 P.2d 637]; *Estate of Campbell* (1920) 46 Cal.App. 612, 621 [189 P. 812].) Even assuming that the court abused its discretion in refusing to permit Lynda McNeal to state her opinion, the error was not damaging. On cross-examination, defendant's counsel extensively questioned Lynda McNeal regarding defendant's behavior. As the reasons and basis for her excluded opinion were before the jury, the failure to permit her conclusion was not prejudicial error.

■ Defendant finally contends that the evidence was insufficient to convict him of voluntary manslaughter in that he did not have an intent to kill Mrs. McNeal.

■ The applicable rules for appellate review in a criminal case are clear. The function of an appellate court begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, which will support the judgment. (*People* v. *Bassett* (1968) 69 Cal.2d 122 [70 Cal.Rptr. 193, 443 P.2d 777].) ■ The evidence must be viewed in the light most favorable to the prosecution and the court must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *People* v. *Bard* (1968) 70 Cal.2d 3, 4-5 [73 Cal.Rptr. 547, 447 P.2d 939].) Where the circumstances reasonably justify the conclusion of the trier of fact, the opinion of the reviewing court that circumstances may also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment. (*People*

v. *Reilly, supra,* at p. 425; *People* v. *Hillery* (1965) 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)

Murder is the unlawful killing of a human being with malice afore-thought. (Pen. Code, § 187.) If a defendant's diminished capacity is such that he had no malice, but nevertheless intended to kill, the offense will be voluntary manslaughter. Where the evidence indicates that defendant had neither malice nor intent to kill, the offense constitutes involuntary manslaughter. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 390 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Castillo* (1969) 70 Cal.2d 264, 270 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Conley* (1966) 64 Cal.2d 310, 322-324 [49 Cal.Rptr. 815, 411 P.2d 911].)

 The intent with which an act is committed is a question of fact, and may be inferred from the surrounding circumstances. (*People* v. *Bard* (1968) 70 Cal.2d 3, 5 [73 Cal.Rptr. 547, 447 P.2d 939]; *People* v. *Welborn* (1966) 242 Cal.App.2d 668, 673 [51 Cal.Rptr. 644].)

 In the present case, testimony indicated that Miss McNeal would "pay for" her mother's refusal to invite him to the party. Defendant borrowed a car which would be unfamiliar in the neighborhood, drove to the McNeal residence, took off his shoes, broke into the home, and went to Mrs. McNeal's bedroom where he was found, knife in hand, standing over the victim's body. This evidence is sufficient to justify the jury's disbelief of defendant's statement and the finding that defendant was suffering from a diminished capacity sufficient to negate malice, but insufficient to negate the requisite intent.

The judgment on count II is reversed; in all other respects, the judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.