Filed 8/24/15  P. v. McCardell CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DONALD RAY McCARDELL,<br><br>Defendant and Appellant. | B255006<br><br>(Los Angeles County<br>Super. Ct. No. YA086684) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan B. Honeycutt, Judge.  Reversed and remanded.

Jamie Lee Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Donald Ray McCardell appeals from the judgment entered after a jury found him guilty of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)) and found true the special allegation that he inflicted great bodily injury in committing the offense (§ 12022.7, subd. (a)). In a bifurcated proceeding the trial court found true the allegations that McCardell had suffered one prior serious felony conviction (§§ 667, subds. (a)(1), (b)-(i), 1170.12) and had served one separate prison term for a felony (§ 667.5, subd. (b)).[2] The court sentenced McCardell under the three strikes law to an aggregate prison term of 16 years. On appeal, McCardell argues that the trial court committed reversible error in failing to instruct the jury on the lesser included offense of simple assault and in denying his post-verdict motions to represent himself under *Faretta v. California* (1975) 422 U.S. 806, 835-836 [95 S.Ct. 2525, 45 L.Ed.2d 562]. He also challenges the amount of the restitution fine the court imposed. We conclude that the trial court did not err in instructing the jury, but we reverse the judgment and remand with directions to allow McCardell represent himself and to file his motion for a new trial.

## FACTUAL BACKGROUND

In October 2012 Shandalon Rhodes was a prostitute who lived alone on the second floor of the Executive Hotel on El Segundo Boulevard in Gardena. The lock on her hotel

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     The original information included three counts and alleged that McCardell had suffered five prior strike convictions. Before trial, however, the People filed an amended information that did not include four prior Texas convictions as strike offenses, and the trial court granted McCardell's motion to dismiss count 3, dissuading a witness by force or threat. The jury was unable to reach a verdict on count 1, assault with intent to commit rape, and the court declared a mistrial and dismissed that count.

room door was broken, and the door could be opened from the outside without inserting a key. Rhodes had seen McCardell on several occasions at the hotel. He was often talking with a group of people sitting near the hotel entrance. Rhodes once gave McCardell money to buy some food. Otherwise, she had no contact with him.

On the evening of October 28, 2012 Rhodes left her hotel room to run some errands. She was addicted to alcohol and drugs at the time and had already consumed a lot of alcohol that day. Rhodes returned to her hotel room carrying a new dress, a package of cigarettes, a plate of food, and two beers. She opened her hotel room door and placed her purchases on the nightstand. Hearing the door close behind her, Rhodes turned and saw McCardell inside her room. She immediately told him to leave. McCardell said, "All I need is a strong black bitch like you and I be all right," and he walked to the foot of the bed in the middle of the room. Believing McCardell wanted to have sex with her because she was a prostitute, Rhodes again asked him to leave. She then walked towards the door, saying she had to go out and urging McCardell to leave.

When Rhodes reached the foot of her bed, McCardell pushed her hard onto the bed. McCardell straddled her, and Rhodes held onto her jeans as he struggled to unzip them. At some point, McCardell said, "Bitch, you real fucking disrespectful out [sic] your mouth," and he punched her three or four times in her mouth. Rhodes said, "I can't believe you're doing this to me." McCardell stopped hitting her and retrieved some towels from the bathroom and handed them to Rhodes. Rhodes examined her face in the mirror. The left side of her upper lip was split open in several places and hanging down. There was blood all over the room.

Rhodes wanted to leave the room, but McCardell stood in front of the door and said, "Bitch, you going to tell? Bitch you going to tell somebody I'm going to go upstairs and get my shit." Rhodes understood McCardell was saying he would get his gun if she reported the attack to the police. Rhodes promised she would not tell the police, saying she needed to get help for her injuries. McCardell then left the room. Rhodes waited a minute or two before she left and crawled down the stairs to the hotel lobby.

3

The front desk clerk called the 9-1-1 operator. Paramedics arrived, but the police did not. As the paramedics were treating her, Rhodes saw McCardell watching her. Because she feared McCardell had a gun, Rhodes falsely told the paramedics that she had fallen, although at trial she insisted that a fall in her room could not have caused her injuries. The paramedics transported Rhodes to the hospital where she received 30 stitches for her injuries. Among Rhodes' injuries was a puncture wound, and she suffered significant swelling around her mouth for about a month. At the time of trial her mouth was still swollen and her nerves were damaged. A physician told Rhodes that she needed reconstructive surgery.

McCardell did not testify at trial. Dr. Marvin Pietruszka, a pathologist, examined Rhodes' hospital records and the photographs of her injuries. Pietruszka testified that the injury to her upper lip and left cheek were caused by blunt force trauma. According to Pietruszka, if blows from a fist had caused Rhodes' injuries then there would have been more trauma to other parts of Rhodes' face, rather than just the discrete lesion she had sustained. Pietruszka suggested a hematoma in the photographs was a blood clot on Rhodes' face that could have been caused by a hand with a pointed ring hitting her or Rhodes falling against a sharp piece of furniture. In Pietruszka's opinion the most likely cause of her injuries was a fall against a piece of furniture.

**DISCUSSION**

A. *The Trial Court Did Not Err in Not Instructing on the Lesser Included Offense of Simple Assault*

The trial court denied McCardell's request for an instruction on simple assault, which is a lesser included offense of assault "by means of force likely to produce great

4

bodily injury."[3]  (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)  The trial court explained that, because McCardell's theory was Rhodes slipped and fell and McCardell had not assaulted her in any way, there was no evidence to support an instruction on simple assault.[4]  The trial court then instructed the jury on assault by means of force likely to produce great bodily injury pursuant to CALCRIM Nos. 875 and 3160.

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.  [Citations.]'  [Citation.]  'That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'"  (*People v. Smith* (2013) 57 Cal.4th 232, 239.)  The trial court has a duty to instruct on lesser included offenses where "'there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.  [Citations.]  To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.'"  (*People v. Campbell* (2015) 233 Cal.App.4th 148, 164, quoting *People v. Blair* (2005) 36 Cal.4th 686, 744-745.)

---

[3]   Simple assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  "No actual touching is necessary, but the defendant must do an act likely to result in a touching, however slight, of another in a harmful or offensive manner.  [Citation]."  (*People v. Wyatt* (2012) 55 Cal.4th 694, 702.)

[4]   The discussion of whether the trial court should give an instruction on the lesser included offense of simple assault was not on the record.

McCardell does not dispute that Rhodes suffered severe injuries. Rather, McCardell argues that because Rhodes consumed a large quantity of alcohol before the incident, she could not recall the timing of certain events after the incident, and Dr. Pietruszka testified that Rhodes' injuries could not have been caused by a fist, the jury reasonably could have determined that McCardell assaulted Rhodes but did not assault her by means of force likely to produce great bodily injury. According to McCardell, the evidence shows that Rhodes incurred her injuries to her lip by falling while intoxicated and hitting her face on a piece of furniture.

The evidence, however, supported only two mutually exclusive scenarios for Rhodes' severe injuries: either McCardell hit her face as Rhodes described or she fell onto a sharp piece of furniture. Dr. Pietruszka opined Rhodes probably fell. Rhodes testified that she did not fall and had only lied to paramedics about falling because she was afraid of (the present) McCardell. There was no substantial evidence to support a scenario where, if Rhodes did not injure herself falling, McCardell caused her injuries in any way other than how Rhodes described the attack. There was no evidence from which a reasonable jury could have concluded that Rhodes fell, cut her lip, and was "simply" assaulted in some way by McCardell. McCardell either assaulted Rhodes by means of force likely to produce great bodily injury or Rhodes fell. The trial court did not err in refusing to instruct the jury on the lesser included offense of simple assault.

*People v. Rupert* (1971) 20 Cal.App.3d 961, cited by McCardell, is distinguishable. In that case, the defendant stated that "he 'thought' he hit" the victim. The court held that the "extent of the injury actually inflicted, as well as the nature of the assault, are questions of fact for the jury to determine," and that the jury might have concluded the defendant did not use force likely to produce great bodily injury. (*Id.* at p. 968.) Here, the only evidence of the amount of force McCardell used was the testimony of Rhodes, which evidenced force likely to produce great bodily injury. Moreover, the court in *Rupert* recognized that the trial court need only give an instruction on a lesser included offense when "the evidence would support such a determination."

6

(*Ibid.*)  As noted, there was no evidence that would support a verdict of simple assault but not assault with force likely to produce great bodily injury.

B.   *The Trial Court Erred in Denying McCardell's Second Post-Verdict Faretta Motion as Untimely*

McCardell was initially represented by a deputy public defender.  After the preliminary hearing, the trial court granted McCardell's request to represent himself after McCardell signed an advisement form and waiver of his right to counsel.  During pretrial proceedings, McCardell filed discovery motions and a motion to set aside the information.  Prior to jury selection, McCardell withdrew his request to represent himself and requested counsel.  The court reappointed the public defender.

The jury returned its verdicts on January 23, 2014.  On February 21, 2014 the prosecutor announced that she was ready to proceed with the bench trial on the prior conviction allegations and began introducing documents to prove McCardell's identity and the fact of his prior serious felony conviction.  Counsel for McCardell interrupted the proceedings to advise the court McCardell wanted to represent himself again.  McCardell confirmed that he was requesting to represent himself and asked the court to continue the bench trial so that he could file motions for a new trial and to dismiss his prior strike conviction.  The court denied McCardell's request to represent himself as untimely because they were "in the middle of trial," but told McCardell he could renew his request for self-representation at the conclusion of the bench trial on the prior conviction allegations.

At the conclusion of the bench trial, the court (after finding the prior felony conviction allegations true) scheduled a date for sentencing and asked McCardell if he was willing to waive time for sentencing until March 17, 2014.  McCardell answered, "Yeah.  I just want to know if I can go pro per and file my new trial motion."  The court told McCardell, "That request is denied.  It's untimely.  We're still in the middle of trial. You haven't been sentenced yet.  So we'll take the matter up on the next court date.  The matter is continued until the 17th."  At the sentencing hearing on March 17, 2014

7

McCardell did not renew his request to represent himself or advise the court that he wanted to file a motion for a new trial.

A defendant has the right under the Sixth and Fourteenth Amendments to waive his or her right to counsel and to represent himself or herself if he or she is competent to do so and invokes that constitutional right voluntarily, knowingly, and intelligently. (*People v. Lynch* (2010) 50 Cal.4th 693, 721-722, overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 637; see *People v. Stanley* (2006) 39 Cal.4th 913, 931-932.) The defendant must unequivocally assert the right of self-representation within a reasonable time prior to the start of trial (*People v. Windham* (1977) 19 Cal.3d 121, 127-128 (*Windham*)), or, as in this case, prior to sentencing. (*People v. Miller* (2007) 153 Cal.App.4th 1015, 1024 (*Miller*)). If the motion for self-representation is timely, unequivocal, knowing, and intelligent, the court must grant it. (*People v. Lynch*, *supra*, 50 Cal.4th at p. 721; *People v. Jackson* (2009) 45 Cal.4th 662, 689.) If the motion is untimely, the court has discretion to grant or deny it, and the defendant has the burden of justifying the delay. (See *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Valdez* (2004) 32 Cal.4th 73, 103.)

In assessing whether a motion for self-representation is timely, the court considers the totality of the circumstances. (*People v. Lynch*, *supra*, 50 Cal.4th at p. 725.) "Thus, a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id.* at p. 726.) The court may also consider whether the defendant will need a continuance. (See *Windham, supra*, 19 Cal.3d at p. 128, fn. 5.) The timeliness requirement prevents a defendant from misusing a *Faretta* motion to delay the trial unjustifiably or to obstruct the orderly administration of justice. (*Lynch*, at p. 722.)

8

When the court determines the defendant's request for self-representation is untimely, the trial court must inquire into the reasons for the request and exercise its discretion in light of several factors identified in *Windham.* Those factors include "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham, supra*, 19 Cal.3d at p. 128, accord, *People v. Lynch, supra,* 50 Cal.4th at p. 722, fn. 10.) A reviewing court will affirm the trial court's exercise of discretion in denying an untimely motion for self-representation where the record reflects the court explicitly or implicitly considered each of *Windham* factors. (*People v. Marshall* (1996) 13 Cal.4th 799, 827-828; see *People v. Bradford* (2010) 187 Cal.App.4th 1345, 1354-1355 ["a trial court's exercise of discretion in denying an untimely *Faretta* motion is properly affirmed if substantial evidence in the record supports the inference that the court had those factors in mind when it ruled"].)

Relying on *Miller, supra,* 153 Cal.App.4th 1015, McCardell contends that he was entitled to represent himself after the trial because his *Faretta* motions were timely and he voluntarily and intelligently waived his right to counsel. In the alternative, McCardell argues that, even if the motions were untimely, the court abused its discretion by denying them without considering the *Windham* factors. Finally, McCardell contends the harmless error analysis does not apply to the trial court's improper denial of his right to self-representation because it is impossible to determine whether he was prejudiced. We agree with McCardell's first contention because there is no substantial evidence to support the trial court's finding that McCardell's last *Faretta* motion was untimely.[5]

---

[5] There is no question that McCardell was competent and that his *Faretta* motions were knowing, voluntary, intelligent, and unequivocal. The issue is whether they were timely. Indeed, as noted, the court granted McCardell's pretrial *Faretta* motion.

In *Miller,* the defendant was represented by counsel throughout trial, including when the jury returned its verdict and when the trial court denied the defendant's motion for a new trial. (*Miller, supra,* 153 Cal.App.4th at p. 1019.) Two months before sentencing, the defendant stated he wanted to represent himself at the sentencing hearing. The trial court, after balancing multiple factors, denied the defendant's motion to represent himself. (*Id.* at p. 1020.) The Court of Appeal reversed, concluding that the defendant's request "made after the jury returned its verdict and his new trial motion had been denied, but well before sentencing, was not made during trial for the simple reason that sentencing occurs posttrial. [Citations.] Sentencing is not like a bifurcated trial on prior convictions, [which is] part of 'a proceeding which ha[s] been divided into separate components for [the] defendant's benefit.' [Citation.] Instead, sentencing is a proceeding separate and distinct from the trial." (*Id.* at pp. 1023-1024.) The court held that, because "the request was timely, [the defendant] had an absolute right to represent himself at sentencing and the trial court was required to grant his request for self-representation, which was unequivocal, as long as he was mentally competent and the request was made 'knowingly and intelligently, having been apprised of the dangers of self-representation.'" (*Id*. at p. 1024.)

McCardell's first post-verdict (and second overall) *Faretta* motion was untimely. McCardell made his first post-verdict *Faretta* motion in the middle of the court trial on his prior conviction, during the prosecution's presentation of evidence. Such a mid-trial request for self-representation, even where the trial is bifurcated, is untimely. (See *Miller, supra*, 153 Cal.App.4th at p. 1024.) The trial court, after properly finding the motion untimely, should have proceeded to consider the *Windham* factors, but there is no evidence that the court did so. Instead, the court invited McCardell to renew his motion at the conclusion of the court trial.

McCardell did as he was told, and stated to the court after the conclusion of the trial that he wanted to represent himself to make a motion for a new trial. Again, the trial court denied the motion as untimely and without analyzing the *Windham* factors.

Although the trial court found that McCardell's second post-verdict *Faretta* motion for the purpose of seeking a new trial was untimely, there is no substantial evidence to support that determination. Like sentencing, a motion for new trial is a posttrial proceeding. A new trial motion must be made before judgment and is timely even if it is made orally on the date of sentencing. (*People v. Braxton* (2004) 34 Cal.4th 798, 807-808 & fn. 2.) Under *Windham* and *Miller*, a request for self-representation for the purpose of filing a new trial motion is timely if made within a reasonable time before the sentencing hearing and will not require a continuance causing undue delay. The trial court never explored, inquired about, or made a finding on these issues. The record shows that on February 21, 2014 McCardell waived time for sentencing for more than three weeks until March 17, 2014. But there is nothing in the record regarding whether McCardell, if allowed to represent himself, would have pursued his new trial motion on or before March 17, 2014, or asked for or needed a continuance, and if so for how long. There is no evidence that McCardell was unable or unwilling to file and argue his motion for a new trial on or before the date of the sentencing hearing, and there is no evidence or reason to believe that granting McCardell's second post-trial *Faretta* motion would have caused any delay in the proceedings. (Cf. *People v. Lynch, supra*, 50 Cal.4th at p. 728 ["reasonable import" of defendant's statements at the hearing on his self-representation motion was "that if the self-representation motion had been granted, defendant would have required an undetermined amount of time to investigate and prepare for trial," and a "trial court may properly consider the delay inherently caused by such uncertainty in evaluating timeliness"].)

The only evidence in the record of what the trial court considered was a factor that actually weighed in favor of finding the second post-verdict *Faretta* motion was timely: McCardell had not been sentenced. The court stated, "We're still in the middle of trial. You haven't been sentenced yet. So we'll take the matter up on the next court date." But the issue was whether McCardell's *Faretta* motion was timely with respect to the sentencing hearing. By refusing to hear and continuing McCardell's motion until the sentencing hearing, the court virtually guaranteed it would be untimely. Moreover, a

11

motion for a new trial "must be made and determined before judgment." (§ 1182; *People v. Braxton, supra,* 34 Cal.4th at p. 807; *People v. Hales* (1966) 244 Cal.App.2d 507, 511.) The court's comments suggest that the court erroneously believed McCardell could not file his new trial motion until after he had been sentenced. (See *People v. Knoller* (2007) 41 Cal.4th 139, 156 ["an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard"].)

The People cite *People v. Doolin*, *supra*, 45 Cal.4th at pages 454-455, as standing for the proposition that the "trial court did not abuse [its] discretion in finding delay where defendant failed to provide estimate of when he would be ready to represent himself in a new trial motion." This is not what the Supreme Court said in *Doolin*. In affirming the denial, after an extensive inquiry by the trial court, of the defendant's motion at sentencing to represent himself, the Supreme Court in *Doolin* stated: "Defendant's request was manifestly untimely. He never requested self-representation during the guilt or penalty phase. He appeared on the day set for sentencing and sought, not to act as his own counsel, but to replace his appointed lawyer with a new one and to secure a continuance. Only when this approach failed did defendant seek self-representation, and only then with the appointment of an assistant to actually draft his moving papers. Defendant had no new evidence to support the motion for new trial he intended to file. When pressed on the question of new evidence, defendant answered vaguely that 'there are still things that need to be done that could be presented to the Court.' Defendant provided no specific information about any new evidence he expected to find, when he expected to find it, or how long he might need to prepare his motions. He was not prepared to proceed and could not provide a reasonable estimate of when he would be ready. The trial court's ruling was well within the scope of its discretion." (*Id.* at pp. 454-455.) Not only did the Supreme Court not state that the defendant's failure to

provide a time estimate justified denying the motion as untimely, the trial court in *Doolin* made the exact inquiry and record the trial court in this case did not make.[6]

The trial court abused its discretion in denying McCardell's last *Faretta* motion because there was no evidence of the circumstances surrounding the request, including whether granting the motion would necessitate a continuance or cause delay. The court also erred by refusing to hear the motion until the sentencing hearing. Therefore, we reverse the order denying McCardell's second post-verdict motion to represent himself, and remand the matter with directions to grant the motion and to allow McCardell to represent himself and bring his motion for a new trial.

C.      *On Remand the Trial Court Can Exercise Its Discretion in Imposing a Restitution Fine*

When McCardell committed his crime in October 2012 the mandatory minimum restitution fine under section 1202.4, subdivision (b)(1), was $240. At the time of McCardell's trial in 2014, however, the mandatory minimum restitution fine under section 1202.4, subdivision (b)(1), was $300. (See *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189, fn. 13.) At the sentencing hearing, the court imposed a $300 restitution fine pursuant to section 1202.4, subdivision (b)(1). The minute order for the sentencing hearing states that the restitution fine was $280.

---

[6]     For example, the trial court in *Doolin* asked the defendant if he knew what a new trial motion was, whether he had any new evidence, if he could find any new evidence in the next two weeks, about his education and whether he was a "slow learner" (which the defendant said he was), how he would "address a motion for new trial," and whether he was ready to proceed that day. The defendant answered all of these questions. The trial court in *Doolin* also advised the defendant that if the court granted his motion he could not argue on appeal he was inadequate to represent himself, and that if the court allowed him to represent himself the court did not have to grant a continuance. The defendant stated he was not ready and needed a continuance. (*People v. Doolin*, *supra*, 45 Cal.4th at pp. 452-453.)

13

McCardell argues that the "trial court appears to have intended to impose the minimum restitution fine amount, but mistakenly imposed the minimum amount applicable on the date of sentencing in 2014, i.e., $300, instead of the $240 minimum applicable at the time [of] McCardell's offense (October 28, 2102)," and that the imposition of the $300 restitution fine violated the ex post facto clauses of the federal and state constitutions.  The People argue that there was no ex post facto violation, and that the abstract of judgment should be corrected to reflect a $300 restitution fine.

Although McCardell may have forfeited his challenge to the trial court's order imposing the $300 restitution fine because he did not object to the fine before or at his sentencing hearing,[7] he will have another opportunity to object at the resentencing hearing.  If the court exercises its discretion to impose the minimum restitution fine, the court should impose the $240 minimum restitution fine at the time of McCardell's offense in 2012, although the court has discretion to impose a restitution fine within the range authorized by law.  (See § 1202.4, subd. (b)(1); *People v. Lewis* (2009) 46 Cal.4th 1255, 1321.)  The minute order and the abstract of judgment should reflect the same restitution fine that the court orally imposes at the resentencing hearing.

## DISPOSITION

The judgment is reversed and the matter remanded with directions for the trial court to grant McCardell's second post-verdict *Faretta* motion and to allow McCardell to file his motion for a new trial.  If the court grants the motion for a new trial, then the court should order a new trial.  If the court denies the motion, then the court should

---

[7]     (See *In re Sheena K.* (2007) 40 Cal.4th 875, 881; *People v. Martinez, supra*, 226 Cal.App.4th at p. 1189; *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.)

14

conduct a new sentencing hearing providing McCardell the opportunity to represent himself.


SEGAL, J.

We concur:


ZELON, Acting P. J.


STROBEL, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.