Filed 11/5/15  P. v. Johnson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061732 |
| v. | (Super.Ct.No. SWF1200642) |
| JEREMY CASE JOHNSON, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.

Affirmed with directions.

Jeremy Case Johnson, in pro. per.; and Elizabeth Garfinkle, under appointment by

the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant and appellant Jeremy Case Johnson of assault with

force likely to cause great bodily injury (count 1; Pen. Code, § 245, subd. (a)(4))[1] and

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

found true an allegation he had committed the offense while out on bail (§ 12022.1). After a bifurcated jury trial thereafter, the jury found true allegations defendant had suffered one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subds. (c)(1)) and one prior prison term (§ 667.5, subd. (b)). The court sentenced defendant to an 11-year determinate term of incarceration consisting of the following: the upper term of four years on the substantive offense, doubled pursuant to the strike prior; two years consecutive on the out-on-bail enhancement; and one year consecutive on the prior prison term enhancement.

After trial counsel filed the notice of appeal, this court appointed appellate counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts, and identifying four potentially arguable issues: (1) whether substantial evidence supported the jury's finding that the assault was likely to cause great bodily injury; (2) whether the court should have awarded defendant additional custody credits for time he spent incarcerated on another case while the current case was pending; (3) whether defense counsel provided constitutionally ineffective assistance of counsel for failing to argue unspecified mitigating factors at sentencing; and (4) that the abstract of judgment should be amended to reflect the court imposed the upper term of four years, not eight.

Defendant was offered the opportunity to file a personal supplemental brief, which he has done. In his brief, defendant contends (1) the court erroneously denied his Penal

Code section 995 motion to set aside the information; (2) the court erroneously denied his Code of Civil Procedure section 170.6 challenge to the judge; (3) he was prejudiced by the lack of an African-American on the jury or in the jury venire pool; (4) the court erred in neglecting to instruct the jury with the instruction on simple battery, instead of simple assault, as a lesser included offense of assault with force likely to cause great bodily injury; (5) substantial evidence failed to support the requisite element that his assault was likely to cause great bodily injury; (6) insufficient evidence supported the true finding on the prior strike allegation; (7) the court erroneously denied defense counsel's request for a *Marsden*[2] hearing; (8) the court erred in considering the victim's gender because it was not an element of the crime; (9) the court should have sentenced defendant to one-third the midterm on the substantive offense as defendant contends it was a subordinate count to the other case in which he had already been sentenced; and (10) the court erred in failing to award him custody credits for time he spent incarcerated in another case while this case was pending. We shall direct the superior court to correct the abstract of judgment to reflect it sentenced defendant pursuant to Penal Code sections 667, subdivisions (b) through (i) and 1170.12. In all other respects, the judgment is affirmed.

I. FACTUAL AND PROCEDRAL HISTORY

On March 16, 2012, the People charged defendant by felony complaint with assault by force likely to produce great bodily injury (count 1; § 245, subd. (a)(4)) and felony vandalism (count 2; § 594, subd. (b)(1)). The People additionally alleged

---

[2] *People* v. *Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

3

defendant had committed the offenses while released on bail (§ 12022.1) and had suffered a prior prison term (§ 667.5, subd. (b)) and prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

On July 19, 2012, the court held the preliminary hearing. A Riverside County sheriff's deputy testified that on February 15, 2012, at around 11:17 p.m., he responded to a call regarding a fight in progress at a Walmart store in Lake Elsinore.

The deputy spoke with the victim, who informed him that two men had been arguing and yelling obscenities in the electronics department of the store. She and other employees attempted to get the men to leave the store. Initially they refused. However, as they eventually began to exit the store through the exit doors, one of the men struck the victim with a closed fist on the left side of her head hard enough to knock her into the wall which caused her to fall to the ground. The strike ripped an earring out of her ear. The victim experienced dizziness, pain, and a visible injury to her ear. She was treated by paramedics at the scene, but declined transportation to the hospital.

Another deputy sheriff who responded to the call testified that a male patron informed him he witnessed a man punch an employee. The deputy reviewed the surveillance videotape and identified defendant as the individual who punched and knocked the employee to the ground.

A third deputy also responded to the call. The deputy spoke with the assistant manager, who informed him that prior to punching the victim, defendant was riding

4

around in an electric shopping cart bumping into displays and shelves all over the store, which damaged the cart.

In the middle of the preliminary hearing, defendant requested, and the court granted, a *Marsden* hearing.  The court denied the *Marsden* request.[3]

Defense counsel argued that the evidence that defendant threw a single punch was insufficient to support the force likely to cause great bodily injury element of the charge.  The court found probable cause to support the count 1 charge, but found the evidence insufficient to support the count 2 charge.  The court discharged defendant on the count 2 charge.

On July 31, 2012, the People charged defendant by information with assault with force likely to cause great bodily injury (count 1; § 245, subd. (a)(4)) and alleged defendant had committed the offense while out on bail (§ 12022.1), had suffered one prior strike conviction, and had suffered one prior prison term (§ 667.5, subd. (b)).  The court arraigned defendant on the information on August 2, 2012.

On September 7, 2012, the court relieved defendant's public defender and appointed him private counsel.  On February 13, 2013, defense counsel filed a motion to set aside the information contending the People adduced insufficient evidence at the preliminary hearing that defendant used force likely to cause great bodily injury.  The People filed opposition.

---

[3]  We ordered that the record be augmented to include a transcript of the *Marsden* hearing as it was not contained in the record on appeal as originally filed.

On March 14, 2013, defense counsel filed a motion to be relieved as counsel of record due to a breakdown in the attorney-client relationship. The court granted the motion.

On June 12, 2013, defendant's newly retained counsel filed a second motion to set aside the information, incorporating the first motion. The People filed opposition. The court denied the motion after a hearing on July 2, 2013.

On September 18, 2013, defendant's retained counsel filed a motion to withdraw as counsel of record due to a breakdown in the attorney-client relationship. The court granted the motion.

On May 12, 2014, the court indicated it had gone over the case with the People, including watching the surveillance videotapes, in order "to get a feel for the strength and weaknesses of the case." This was in response to the People's offer of a plea agreement for nine years' incarceration. Defendant personally asked the court: "What exactly was the conduct and what you saw?" The court responded: "Do you want the Court's assessment?" The defendant replied: "Yes, I do."

The court provided the following assessment: "It was a cheap shot, cold-cocked a woman right in—smashed her face. It looked like you caught her with everything you had. And I can't tell you how strong you are. I just know—I can kind of size people up when they come into the courtroom. You look like a fairly strong, muscular guy, and it looked like you got caught in a moment of anger and fury. You caught that woman with everything that you had, outright punched her . . . right to the side of her face. [¶] . . .

6

[¶] . . . I'm just saying as a fact finder what I saw, what I observed was a full-blown punch to the side . . . of the head where that woman went down like a bag of potatoes instantly."

When asked by defendant if the court's consideration of his size and the victim's gender would prejudice the court, the court responded it would not, but the court would consider the videotape when rendering sentence if the jury convicted defendant. Defendant responded that his size and the victim's gender were irrelevant. The court replied that those factors were "very relevant" to sentencing.

Defense counsel then asserted defendant wished to challenge the judge for prejudice pursuant to Code of Civil Procedure section 170.6. The court responded: "It's untimely. The [Code of Civil Procedure section] 170.6 will be untimely . . . ." "So when the case is assigned under [section] 170.6, Code of Civil Procedure, once the case [is] assigned to this department, if there was a [Code of Civil Procedure section] 170.6 [challenge] that needs to be filed, when I assign the case to this department for trial purpose[s], that's when the [Code of Civil Procedure section] 170.6 [challenge] had to be made." "It has to be made at that time, at the time of—the assignment that is made, and it's assigned, the case, to—in this department, and you were present here when the assignment was made."

7

Voir dire took place between May 13 and 15, 2014.[4] The deputy swore in the jury on May 15, 2014. After the court read the jury introductory instructions, defendant stated: "In . . . regard to the jury, Your Honor, I don't feel I would receive a fair trial due to the fact there is not one person of color" "or ethnic background" on the jury.[5] The court responded that it was the bailiwick of defense counsel to participate in venire to ensure a fair jury composition.

Defendant requested additional time to find counsel who "is willing to represent me fairly . . . ." Defense counsel stated: "I interpret that as a request for a *Marsden* motion." The court disagreed, but asked defendant: "Are you making a motion to have your attorney relieved as attorney of record?" Defendant responded: "No, I'm not."

At trial, the overnight manager at the Walmart store testified that on February 15, 2012, she heard a commotion in the electronics department. Defendant was in an electronic courtesy scooter crashing into counters and displays. The People played several surveillance videotapes of the incident.[6]

The manager asked defendant to leave. Defendant became "belligerent. He was cussing and was using foul language and telling me he wasn't going to leave the store."

---

[4] We ordered augmentation of the record to include voir dire due to defendant's contention that the venire pool's purported lack of ethnic and racial diversity was prejudicial. The reporter's transcript of the voir dire does not reflect at all upon the racial or ethnic makeup of the venire panel.

[5] The probation officer's report lists defendant's race as "Black."

[6] We requested, received, and reviewed the surveillance videotapes.

8

Defendant eventually began heading for the front of the store. The manager called the police, who told her to track defendant to ensure he left the store; she did.

Defendant's cousin attempted to get defendant to leave the store by pulling him. His cousin said: "'You don't want to go back to jail.'" Defendant fought his cousin off, pushing him. Defendant lunged at the support manager. A customer intervened, getting into "a physical fight with him, and put him to the ground in a headlock."

Defendant "b[r]ought his hand up and smacked me in the . . . side of the face." However, the manager did not suffer any injuries as it was a soft hit.

As he was leaving through the exit doors, defendant hit the sensor on the side of the door. His cousin and another man "grabbed him and pushed him out of the exit doors." The overnight manager saw the victim hit the wall and fall to the ground. She informed police defendant hit one of her associates.

The victim testified she was working at the store that night when there was a commotion in the electronics department involving two men arguing and yelling. One of the men was defendant. Defendant was asked to leave. He became angry, yelled, used foul language, and belittled the employees. Defendant pushed, punched, and scattered merchandise on the shelves to the floor.

When defendant was in the vestibule between the two sets of exit doors, he hit and rattled the sensors which align the doors. Defendant then "swung his arm and his fist and his hand and struck me across the back of the—about the head, had struck me on the ear and on the side of the neck." The victim said she believed the hit was openhanded. The

9

victim hit the wall with her right shoulder and slid down the wall to the floor. The People played video surveillance of the hit.

The victim held her face in pain. She became dizzy and nauseous. The victim's earring had been knocked out of her ear. She had ringing in her ear and burning on the back of her neck. The victim sustained swelling and scratches to her face. Pressure built up in the ear on which she had been hit and she could not hear out of that ear very well. She refused treatment at the scene.

The following day, the victim was still "very dizzy," had stiffness in her neck and shoulder, and the side of her face was sensitive to touch. Nevertheless, she returned to work the day after the incident. The victim experienced a continuous headache for several days to a week. She saw a physician the following week when she was still experiencing dizziness, headaches, muffled hearing, and sensitivity to touch. She failed a hearing test. The victim failed a subsequent hearing test with a workers' compensation doctor and was referred to a specialist. The dizziness and headaches subsided about a month after the incident.

The victim was diagnosed with barotrauma, for which she was told there was no remedy. She was told to obtain a hearing aid, have surgery, or seek a second opinion. She is still seeking treatment through her personal physician.

The victim received an audiogram in which she tested within normal limits. She was cleared to return to normal work duties and one medical report indicated she was in full recovery.

After the People rested, defense counsel consulted with defendant about whether defendant would testify. Defendant apparently decided he wanted to testify. Defense counsel asked the court: "Can I do a *Marsden* on myself so I can put something on the record?" The court responded: "No, you can't do that."

The next day, during discussion of jury instructions, defense counsel requested instruction on an unspecified lesser included offense. The court stated: "There has to be some substan[]tive evidence or substantial evidence to warrant presenting a lesser included instruction. But while I don't see [it], from what I have observed—a rational[] fact finder . . . can make the opposite determination . . . from the Court. I don't see that is likely, but it's within the realm of evidence . . . and . . . I'll go ahead and give that."

The next day, defense counsel indicated defendant was not going to testify after all. The court advised defendant of his right to testify or not to do so. Defendant stated he understood and wished not to testify. The parties stipulated defendant was out of custody on bail for a felony offense on February 15, 2012.

The parties indicated there was no objection to instructing the jury with CALCRIM No. 875, the standard pattern jury instruction for assault with force likely to cause great bodily injury. With respect to CALCRIM No. 915, the lesser included offense of simple assault, the court noted: "I think the evidence is borderline whether or not there is substantial evidence to warrant giving a lesser offense. It is a necessarily lesser included offense. While this Court may have a different reasoning pattern, it's not inconceivable that a jury could ultimately arrive [at] a different conclusion than the

11

Court. So I'm going to give [CALCRIM No.] 915 out of an abundance of caution."
There was no objection. The court instructed the jury with both CALCRIM Nos. 875 and
915.

During their closing statement, the People played the surveillance videotapes.
During closing argument, defense counsel argued the jury should find defendant guilty of
the lesser included offense of simple assault. Defense counsel repeatedly conceded an
assault had occurred: "There's no question what we saw on the video was an assault.
There's no question about it." "We have already indicated that was an assault that you
saw . . . ." "That is an assault but that isn't something that is likely to result in a great
bodily injury." "It is an assault." Defense counsel conceded the victim had been "hit"
and "slap[ped]."

After the jury convicted defendant on count 1 and found the out-on-bail
enhancement true, jury trial commenced on the prior strike and prior prison term
allegations. Upon the testimony of a forensic specialist, the People introduced and
admitted into evidence a certified copy of a section 969b packet of defendant's prior
convictions. The jury found the prior conviction allegations true.

In the probation report received on June 18, 2014, the probation officer noted that
defendant had been arrested on February 16, 2012, and released on bail on February 17,
2012. On February 24, 2012, defendant sustained a misdemeanor conviction for which
he was sentenced to 180 days of custody imposed concurrently with that which he had
received in another case. On February 24, 2012, defendant had been convicted of a

12

felony offense and several misdemeanor offenses with true findings on attached prior strike and prior prison term allegations. Defendant received a sentence of 44 months in prison. He was released on postrelease community supervision on May 21, 2013. On May 21, 2013, defendant was taken into custody in the current matter after his conviction. Defendant was released on July 11, 2013. On October 2, 2013, defendant was alleged to have violated his release in another matter, release was revoked, and he was returned to custody. On October 9, 2013, defendant admitted his violation and received 88 days of custody.

The probation officer noted that "defendant believes he should be sentenced to one-third the middle term plus the enhancements because the District Attorney did not file the case until after he was already a sentenced prisoner in another matter." The probation officer additionally informed the court that "following the defendant's release on bail in the instant matter, the defendant was sentenced to state prison in an unrelated matter. On March 21, 2013, a Declaration and Order for Transportation of the defendant was signed by the Court and the defendant's custody was transferred from the California Department of Corrections and Rehabilitation [(CDCR)] to the Riverside County Sheriff's Department on April 4, 2013. Based upon the paperwork received from the [CDCR], this date represents when the defendant was subsequently released on post-release community supervision and began local custody credit in the instant matter." The probation officer found no circumstances in mitigation, recommended imposition of the

upper term on count 1, and computed total custody credits of 165 days, consisting of 83 days actual and 82 days conduct credit.

On June 19, 2014, the date originally set for sentencing, defense counsel noted that defendant "is of the belief that because this case . . . was filed while he was serving— finishing up a state prison pr[ior] commitment that this case should be sentenced at . . . [one third] the mid-term as opposed to a full-term case . . . ." Defense counsel personally observed: "My sense is if he is a sentenced prisoner and he is being sentenced on a new case, that it would run consecutive to the prison case he already has at one-third the mid-term." The court asked for briefing on the issue and asked for an additional memorandum from probation regarding the issue.

The court noted that "[d]uring the trial, [defendant], my recollection was that— you made a remark that there were . . . no minorities or African/Americans on the jury. It is true on the jury of 12, and then the alternate, that ultimately sat on the case, there were no African/Americans, at least what the Court could determine by race, or last name, or anything of that nature. But just so the record is clear, by surname and by their appearance—that's all the Court can go on—just by the initial appearance, there [were] . . . three individuals that appeared to be . . . Hispanic . . . ." The court also observed another juror appeared to be of Middle Eastern descent. "The Court also did note there

14

were three in the jury panel that came up. There was at least three jurors. They just weren't called because of the random selection."[7]

With respect to defendant's peremptory challenge against the judge, the court noted: "You asked me to take a look at the videotape . . . [s]o that the Court could have at least an understanding of what the case was." The court observed that after having viewed it, at that point in time, three or four times, the court's opinion of what had occurred had not changed. The minute order reads that the court discussed "[d]efendant[']s request of the Court[']s opinion after the Court reviewed the video and defendant[']s subsequent request to file a [Code of Civil Procedure section] 170.6 [challenge] after the Court gave the defendant his opinion of the video." The court reiterated that defendant's request to exercise a peremptory challenge was denied as untimely. The court additionally found a factual basis for the jury's findings on defendant's prior offenses.

In the probation memorandum filed July 25, 2014, the probation officer added a statement that "[a]lthough the defendant is not entitled to all the local custody time pursuant to *In re Joyner* [(1989) 48 Cal.3d 487], if the Court wishes to grant all the local custody time the credit for time served would [be] 179 days actual plus 178 day[s] pursuant to . . . Section 4019 for a total of 357 days." The probation officer

---

**7** The court did not specify what race or ethnicity the three potential jurors were on the venire panel.

recommended an award of 264 days of custody credits, consisting of 132 days of actual and 132 days of conduct credit.

At the sentencing hearing on August 7, 2014, the court noted: "An issue arose during our last sentencing hearing in which the Court asked for any additional briefing, and it had to do with an issue at that time that the defendant actually raised it then through his attorney, resulting in a question as to whether or not there had to be a—or the defendant was eligible for full and consecutive sentencing because of the disposition that occurred in case [No.] SWF10000435. [¶] The probation officer sent a memorandum to the Court indicating no additional credits are being approved, and that the defendant was not eligible for any resentencing, according to the cases that are set forth here. I have not received any additional briefing. My research had indicated that the defendant isn't eligible for full and consecutive sentencing."

The People observed that "the fact that the defendant's term of imprisonment for his prior felony case had been completed, he is not eligible for one-third the mid-term." Defendant personally contended the instant case was subordinate to his prior conviction and sentence.

Moving on to sentencing, the court exposited: "I would point out that the video was very clear to the Court that the victim . . . was not involved in actually removing the defendant from the Walmart. She was the manager or assistant manager standing by the doorway. She said nothing to provoke, nor detain him, nor—did not physically enter into any type of altercation with the defendant. It was, if you will, a blow to the face [to] an

16

unsuspecting victim." The court noted there were no circumstances in mitigation. Defense counsel submitted.

Defendant interrupted the court to request a *Marsden* hearing. The court responded: "Please don't talk, or I am going to have you removed from the courtroom to finish the sentencing." The court imposed sentence as noted above granting defendant total credits of 264 days as recommended by the probation officer.

## II. DISCUSSION

### A. *Section 995 Motion*

Defendant requests review of the court's denial of his section 995 motion. We find no basis for reversal.

"[S]ection 995 allows a defendant to challenge an information based on the sufficiency of the record made before the magistrate at the preliminary hearing. [Citation.] In reviewing the denial of a . . . section 995 motion to set aside an information, we 'in effect disregard[] the ruling of the superior court and directly review[] the determination of the magistrate holding the defendant to answer.' [Citation.] Insofar as the . . . section 995 motion rests on issues of statutory interpretation, our review is de novo. [Citation.] Insofar as it rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendants to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the

defendant's guilt' [citations]." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071-1072.)

Here, a sheriff's deputy testified the victim and another employee told him defendant struck the victim with a closed fist on the left side of her head hard enough to knock her into the wall which caused her to fall to the ground. The victim testified the punch ripped her earring out. She experienced dizziness, pain, and a visible injury to her ear. The victim was treated by paramedics at the scene. This was sufficient evidence for the court to find a strong suspicion defendant had assaulted the victim with force likely to cause great bodily injury. (*People v. McCaffrey* (1953) 118 Cal.App.2d 611, 616-617 [whether a blow of a fist is such force as likely to produce great bodily injury is a question for the fact finder].)

B. *Code of Civil Procedure Section 170.6 Challenge*

Defendant contends the court erroneously denied his Code of Civil Procedure section 170.6 challenge. We disagree.

"'The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate.' ([Code Civ. Proc.,] § 170.3, subd. (d).) The standard of review is abuse of discretion and '[a] trial court abuses its discretion when it erroneously denies as untimely a motion to disqualify a judge pursuant to [Code of Civil Procedure] section 170.6.'" (*Hemingway v. Superior Court* (2004) 122 Cal.App.4th 1148, 1153.)

18

"If directed to the trial of a criminal cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance." (Code Civ. Proc., § 170.6, subd. (a)(2).) It shall not be grounds for disqualification that the judge has "in any capacity expressed a view on a legal or factual issue presented in the proceeding . . . ." (Code Civ. Proc., § 170.2, subd. (b).)

Defendant forfeited appellate review by failing to challenge the ruling by filing a petition for writ of mandate. Moreover, defendant invited any error by requesting the court's assessment of the case. Furthermore, the court acted appropriately in denying the challenge as untimely because defendant did not issue the challenge within 10 days of notice of assignment or within10 days of his first appearance. Finally, the court's expression of its views on the factual issue presented, at defendant's request, is not grounds for disqualification.

C. *Racial Composition of Venire Pool and Jury*

Defendant contends he was prejudiced by the lack of racial and ethnic diversity on the jury and the venire pool.

"[A] prima facie violation of the fair cross-section requirement requires proof (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this

19

underrepresentation is due to systematic exclusion of the group in the jury selection process." (*People v. Burgener* (2003) 29 Cal.4th 833, 859.)  "The second prong 'requires a constitutionally significant difference between the number of members of the cognizable group appearing for jury duty and the number in the relevant community.' [Citation.]" (*Ibid.*)

Initially we note defendant forfeited his challenge to the racial and ethnic composition of both the venire pool and the jury by failing to raise the issue below prior to the swearing in of the jury.  No motion was made below challenging the exercise of any of the People's challenges on the basis of race.  Defendant did not raise the issue of the final racial composition of the jury until after it had been sworn.  (*People v. Morrison* (2004) 34 Cal.4th 698, 709-710.)  Moreover, defendant's contention that the jury did not contain a single member of anyone of color or "ethinic background"[8] was contradicted by the court's indication the jury included three Hispanic individuals and one Middle Eastern individual.

Furthermore, defendant has failed to make a prima facie showing on any of the essential prongs to challenge the constitutionality of the venire pool.  Nothing in the record provides us with the racial and ethnic constitution of the venire pool.  The only information we have as to the racial composition of the jury and venire panel is that provided by the court.  The court stated that the jury contained no African-Americans;

---

[8] We interpret defendant's use of the word "ethnic" to mean anyone of an ethnicity not representative of the majority in the community or anyone who is not White. All individuals, including Caucasians, are of some ethnic background.

however, the court noted that it did appear to have three Hispanics and one Middle Eastern individual. The court appears to have indicated that there were three Black individuals on the venire panel. Defendant is not entitled to a jury which contains a set number of members who share his own racial background; rather, defendant may only challenge the exclusion of members of racial minorities from the jury on the basis of race alone. (*People v. Reynoso* (2003) 31 Cal.4th 903, 913-914) Likewise, defendant has failed to establish that the venire pool was not representative of the racial composition of the community and that such underrepresentation was due to the systematic exclusion of any group. (*People v. Burgener*, *supra*, 29 Cal.4th at p. 859.) Thus, defendant's challenge to the racial and ethnic composition of the jury and venire pool fails.

D. *Instructing With CALCRIM No. 960, Simple Battery, as a Lesser Included Offense of Assault With Force Likely to Cause Great Bodily Injury*

Defendant contends the court should have instructed the jury with CALCRIM No. 960, the standard instruction on simple battery, as a lesser included offense of assault with force likely to cause great bodily injury. We disagree.

First, the court already instructed the jury with CALCRIM No. 915, the lesser included offense of simple assault. Second, the court has no duty to instruct on its own motion on simple battery as a lesser included offense of assault with force likely to cause great bodily injury. Here, defense counsel did not request instruction with CALCRIM No. 960. (See *People v. Yancy* (1959) 171 Cal.App.2d 371, 376 [where circumstances warrant, the court is required to instruct on simple *assault* as a lesser included offense of

21

assault by means of force likely to cause great bodily injury].)  Third, instruction with CALCRIM No. 960 as a lesser included officense of assault with force likely to cause great bodily injury is required only where requested and when the evidence is such that it is unclear whether the defendant beat or merely touched the victim.  (*Id.* at p. 374.)  Here, both the testimony and the surveillance videotape made it clear defendant did not merely touch the victim, but threw a punch which caused the victim to be knocked into a wall and fall to the ground causing the victim lasting pain, among other symptoms.  There was no evidence which would support instructing with CALCRIM No. 960.  Finally, during his closing argument, defense counsel repeatedly conceded defendant had committed an assault, not a battery.

E.  *Sufficiency of the Evidence the Hit Was Likely to Cause Great Bodily Injury*

Defendant contends there was insufficient evidence to support the element of count 1 requiring that the assault be likely to cause great bodily injury.  We disagree.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citations.]  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]'"  (*People v. Brown* (2014) 59 Cal.4th 86, 105-106.)  "Whether assaultive force reaches a level of that likely to produce great bodily injury is a question of fact for

22

the jury.  [Citations.]"  (*People v. Ausbie* (2004) 123 Cal.App.4th 855, 861, fn. 3, disapproved on another ground in *People v. Santana* (2013) 56 Cal.4th 999, 1010-1011; *People v. McCaffrey*, *supra*, 118 Cal.App.2d at pp. 616-617 [whether a blow of a fist is such force as likely to produce great bodily injury is a question for the fact finder].)

Here, the People adduced sufficient evidence that defendant's blow to the victim was likely to cause great bodily injury.  As noted above, both the testimony and the surveillance videotape reflect defendant threw a punch which caused the victim to be knocked into a wall and fall to the ground causing the victim lasting pain, among other symptoms.  Although the victim later characterized the strike as openhanded, she initially testified defendant struck her with his "fist."  The victim's initial testimony is supported by the surveillance videotape.

Moreover, even though the People were not required to prove the victim sustained any injury (*People v. Cook* (2015) 60 Cal.4th 922, 928 ["[A] single conviction of assault by means of force likely to produce great bodily injury . . . does not require, as an element, the actual infliction of great bodily injury"]), they adduced evidence the victim incurred substantial, long-lasting injuries.  The victim testified she incurred pain, dizziness, and nausea which lasted several days to a week.  She experienced loss of hearing in her left ear which lasted months.  This was sufficient evidence from which the jury could reasonably conclude defendant's assault upon the victim was likely to cause great bodily injury.

23

F. *Sufficiency of the Evidence to Support the True Finding on the Prior Strike Conviction*

Defendant contends insufficient evidence supports the true finding that he had previously pled to an offense which qualified as a prior strike conviction. We disagree.

An abstract of judgment included in the certified section 969b packet admitted into evidence at defendant's jury trial established defendant pled guilty to a charge of felony criminal threats (§ 422) on April 26, 2006, for which he was sentenced to three years' incarceration. A forensic specialist testified the section 969b packet contained an abstract of judgment which reflected defendant had been convicted on April 26, 2006, for felony criminal threats. A conviction for criminal threats qualifies as a prior strike conviction. (§ 1192.7, subd. (c)(38) [conviction for criminal threats in violation of § 422 qualifies as a prior serious felony].) Thus, the People adduced sufficient evidence defendant had a prior conviction which qualified as a strike.

G. *Marsden*

Defendant contends the court erred in denying defense counsel's request for a *Marsden* hearing. We disagree.

The trial court is required to conduct a *Marsden* hearing whenever *defendant* indicates through defense counsel a desire for substitute counsel. (*People v. Sanchez* (2011) 53 Cal.4th 80, 89-90.) However, there is no requirement that the court grant such a hearing when defense counsel requests the hearing based solely on a desire to "put something on the record." Here, neither defendant nor defense counsel indicated any

24

desire of defendant for substitute counsel.  Thus, the court was not required to provide a *Marsden* hearing.

H.  *Consideration of the Victim's Gender*

Defendant complains he was prejudiced by the court's purported improper consideration of the victim's gender.  We disagree.  A victim's particular vulnerability is an appropriate factor to consider in aggravation when the court sentences a defendant. (Cal. Rules of Court, rule 4.421(a)(3).)  The court may also consider whether the offense involved a threat of great bodily harm or other act disclosing viciousness or callousness. (Cal. Rules of Court, rule 4.421(a)(1).)

Here, defendant requested the court's assessment of his case after the court had watched the surveillance videotape of the incident.  The court noted defendant had punched an unsuspecting woman in the face.  Defendant asked if this would prejudice the court.  The court correctly stated it would neither consider the victim's gender nor defendant's size in making any ruling during trial, but that it could consider those factors in sentencing.

In imposing the upper term, the court noted defendant punched the victim, who was not involved in removing defendant from the store, while she was doing nothing more than standing by as defendant exited the store.  It is not at all clear whether the victim's gender entered into the court's sentencing calculus.  Nevertheless, the court could correctly determine the victim was particularly vulnerable, at least in part based on her gender and size, and that defendant's act threatened great bodily injury and was

25

conducted with a degree of callousness and viciousness. Thus, the court acted within its discretion in considering the circumstances involved in defendant's attack on this particular victim when imposing the upper term.

I. *Sentencing to One-third the Midterm*

Defendant contends the instant case was subordinate to another previous, unspecified conviction upon which he had already been sentenced. Thus, he maintains the court should have sentenced him in the instant matter to one-third the midterm rather than a full, consecutive, upper term.

Courts may not impose consecutive upper term sentences on current convictions which are subordinate to others. (§§ 669, 1170, 1170.1.) However, where the court is sentencing a defendant in a case in which sentence on his prior offenses has already been imposed *and served*, the respective cases are not concurrent with one another, the latter case is not subordinate to the prior offenses, and sentence on the latter case is not imposed consecutively, but separately from those the defendant received in the prior cases. (See *People v. Riggs* (2001) 86 Cal.App.4th 1126, 1131.)

Here, although defendant was arrested and charged in the prior cases after being charged in the instant case, defendant had already completed the sentence imposed in the prior cases. Thus, because defendant's sentences in the prior cases were completed, the instant case was not subordinate to those cases, and the court could impose the full sentence separately, rather than consecutively.

26

J. *Custody Credits*

Defendant contends he was entitled to custody credits for all the time he spent in custody during the pendency of the instant matter, including for time spent in custody on other matters. We disagree.

"[A] period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*In re Joyner* (1989) 48 Cal.3d 487, 489.)

In the instant matter, defendant has failed to demonstrate whether the time he spent in custody on other matters was attributable to the proceedings in this case. Likewise, he has failed to demonstrate he would not have remained in custody in his other matters were it not for a restraint related to the instant case. Nothing in this record reflects defendant's other convictions bore any relation to the instant proceedings. Moreover, the record fails to reveal whether defendant received custody credits when sentenced in his other matters. If so, then defendant would be barred from receiving duplicative credits. Even if not, defendant bears the burden of proving entitlement to those credits. Defendant has failed to demonstrate any relation between his custody in

27

the other cases and the instant proceedings and, therefore, is not entitled to custody credits acquired in those cases.

Under *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.[9]

### III.  DISPOSITION

The superior court is directed to correct the abstract of judgment to reflect it sentenced defendant pursuant to sections 667, subdivisions (b) through (i), and 1170.12. The trial court shall forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

McKINSTER _____

---

[9] We agree with counsel's contention that the abstract of judgment must be corrected, but we disagree with the specified manner of correction.  Had the clerk simply checked the box indicating the sentence had been imposed pursuant to sections 667, subdivisions (b)-(i) and 1170.12, the indication on the document that defendant had been sentenced to the upper term of eight years would have been correct because it would have included the doubling of the upper term of four years pursuant to the aforementioned statutes.  However, the clerk did not check that box.  Thus, it appears the court simply imposed an illegal upper term of eight years without resort to the prior strike finding.  We shall direct the court to correct the abstract of judgment by checking the box indicating the sentence was imposed pursuant to sections 667, subdivisions (b)-(i) and 1170.12.

28

Acting P.J.

MILLER  
                                 J.